SIGURD ROGSTAD *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

November 12, 1883.

**Contributory Negligence—Dismissal properly Ordered.**—The evidence in this case considered, and *held* that the undisputed facts conclusively show that plaintiff himself was guilty of negligence, and that there is no reasonable chance for drawing a different conclusion from them; and that if a jury should, on such evidence, find a verdict for plaintiff, it would be the bounden duty of the court to set it aside. Therefore (following *Abbett* v. *Chicago, Mil. & St. Paul Ry. Co.,* 30 Minn. 482,) the question of negligence was one of law for the court, and the action was properly dismissed.

This action was brought in the district court for Hennepin county, and tried before *Koon,* J., who, at the close of plaintiff's case, ordered a dismissal, but afterwards granted a new trial. From the latter order the defendant appeals.

*R. B. Galusha* and *Benton & Roberts,* for appellant.

*Babcock & Davis,* for respondent.

MITCHELL, J. The rules or tests that determine whether in a given case negligence is a question of law for the court, or one of fact for the jury, have been recently stated by this court in the case of *Abbett* v. *Chicago, Mil. & St. Paul Ry. Co.,* 30 Minn. 482, and need not now be repeated.

The facts in this case, as disclosed by the evidence, are that plaintiff was assisting in the care of a car-load of his brother's cattle, which was set on a side-track of defendant's yard, in Minneapolis, to await the afternoon freight train, by which it was to be transported northward. The car had been placed there in the morning. About one o'clock in the afternoon of the same day, it became necessary to procure water for the cattle, and plaintiff went across the tracks to the engine-house, a small building on the opposite side, and, while on his return with the water, was struck by a switch-engine coming from the west. At the place where he was crossing there were some six parallel railroad tracks, occupying a space, from outside to outside, as

shown by the map, of some 80 feet. The cattle car was on the outside track, opposite the engine-house, and some 200 feet east of the Holden-street bridge. Hence plaintiff had to cross five tracks to get from the engine-house to the cattle car with the water. On the first track which he crossed—that is, the outside one next the engine-house—there were some empty cars standing a short distance west of him; but, after this track was crossed, there was no obstruction to prevent his seeing the approach of an engine either way. The ground was level, the track straight, and on the same level. How far an approaching engine could have been seen, does not clearly appear from the oral testimony, but the map shows it must have been several hundred feet. The track on which he was injured was one of the two next to the one on which the cattle car stood. Hence he had already crossed three or four tracks. While on this track he says he heard men "holler" "look out;" that he stopped, (right on the track,) turned, and looked back to the men at the elevator near the engine-house, who had "hallooed," to see what was the matter, and then turned around again, and then for the first time saw the engine, which he says was within two feet of him, and running at the rate of 15 miles an hour, and struck him before he had time to get off the track. Plaintiff was a young man of unimpaired sight and hearing. It does not appear that there was any noise or confusion to distract his attention, unless it was the men at the elevator calling to him to "look out." The place was not a street-crossing, but in the private yard of the defendant. These tracks were in almost constant use, of which fact plaintiff was aware, he having, as he admits, seen trains frequently passing on them each way on that day.

Much of the force of the evidence is contained in the map which is made a part of the case, and is incapable of being fully expressed in words; but it seems to us to demonstrate almost to a mathematical certainty that plaintiff was grossly negligent. He was certainly bound to know that standing upon or walking across these tracks was attended with danger. Assuming that he had an implied license from defendant to cross them in order to get water for his stock, the privilege was to be exercised at his own risk, in so far as to require him to exercise it with great care. *Donaldson* v. *Milwaukee & St. P. Ry.*

*Co.,* 21 Minn. 298. Ordinary prudence requires one who attempts to cross a railroad, especially under such circumstances, to use his senses for the purpose of ascertaining whether he may do so in safety. This is an established rule of both law and experience. *Abbett* v. *Chic., M. & St. P. Ry. Co., supra.* A party is bound to continue to use his senses while crossing the place of danger, as well as when approaching it. This was peculiarly so in this case, in view of the distance to be passed, the number of tracks to be crossed, and the frequency with which they were used.

Under the evidence there can be no escape from one of two alternatives. Either plaintiff was crossing this track heedlessly, without using his senses to see whether he could do so safely, *or,* if he did look before he started across it, he must have stopped and continued to stand upon it, without further observation, for some considerable space of time, while looking back at the men at the elevator who called out to him. Either would constitute a clear case of negligence. All the probabilities of the case tend to the conclusion that even before stopping he had not continued to use his senses, and was already for that reason in imminent danger from the approaching engine, of which fact he himself was unconscious, but which was apparent to the men at the elevator, who attempted to warn him. But, accepting as true his statement that he looked before going on this track, his stopping and standing upon it and looking back a sufficient length of time to permit the engine to get within two feet of him, without any further use of his senses to guard against approaching danger, was certainly a most negligent act. It seems clear, in any view of the case, that the accident to this young man was caused by his own thoughtlessness, which in law amounted to negligence. We see no chance for any other reasonable conclusion, and we think that if a jury, on such a state of facts, should find a verdict for the plaintiff, the court would be bound to set it aside.

We are therefore of opinion that the first impressions of the court were right, and that the action was properly dismissed when plaintiff rested. The facts in this case are quite different from those of *Mark* v. *St. Paul, M. & M. Ry. Co.,* 30 Minn. 493.

Order reversed.