[Sac. No. 3169. In Bank.—October 25, 1922.]

ROY J. YOUNG, as Special Administrator, etc., et al., Plaintiffs; CHARLOTTE BLUHM, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Respondents.

[1] Negligence—Second Trial—Contributory Negligence—Law of Case.—Where after the reversal of the judgment on appeal in an action to recover damages for death, the case is retried and on the second trial the evidence upon the issue of contributory negligence is practically the same as that presented upon the same issue at the first trial, the ruling of the appellate court that the question of contributory negligence should not have been submitted to the jury becomes the law of the case.

[2] ID.—DEATH OF MOTORCYCLE RIDER—ATTEMPT TO CROSS RAILROAD TRACK AHEAD OF MOVING CABOOSE—EVIDENCE—INAPPLICABILITY OF DOCTRINE OF LAST CLEAR CHANCE.—In an action to recover damages for the death of the rider of a motorcycle who was killed while attempting to cross the main line track of a railroad ahead of a moving caboose, where it was shown that the deceased was traveling at a speed of about six or eight miles an hour when he was first seen by the trainmen on a passing track 13.8 feet from the point of collision, the failure of the trainmen to apply the emergency brakes at the very instant they sighted the deceased did not render the railroad company liable under the doctrine of last clear chance, since the doctrine could not come into play before the deceased was in a position of peril from which he could not extricate himself by the exercise of ordinary care.

[3] ID.—POSSESSION OF FACULTIES OF SIGHT AND HEARING—PRESUMPTION AS TO USE.—The law presumes that a person possessing normal faculties of sight and hearing must have seen and heard that which was within the range of his sight and hearing.

[4] ID.—CROSSING IN FRONT OF MOVING TRAIN—CONDITION OF MENTAL ABSTRACTION—EFFECT OF.—Absent-mindedness or forgetfulness will not suffice as an excuse for the neglect of a person about to cross a railroad track to look and listen for a possible approaching train, and a person who attempts, regardless of warnings, to cross in front of a moving train, even though he be apparently in a condition of mental abstraction and consequently indifferent to the peril of his situation is nevertheless negligent.

[5] ID.—DOCTRINE OF LAST CLEAR CHANCE.—A failure to fulfill the duty of exercising reasonable and ordinary care to avoid injuring a person who is known to be in a situation of peril from which he cannot extricate himself by the exercise of ordinary care will render a defendant liable in damages for the resulting injury despite the previous negligence of the person injured.

[6] ID. — CONTEMPORANEOUS NEGLIGENCE — DOCTRINE INAPPLICABLE.— The doctrine of last clear chance has no application to a situation where by their mutual carelessness an injury ensues to one of two parties, both of whom are contemporaneously and actively in fault down to the very moment of the injury.

[7] ID.—APPLICABILITY OF DOCTRINE.—Liability is placed upon the party inflicting the injury only if immediately before the actual infliction of the injury the injured person was in such a situation as to be unable by the exercise on his part of reasonable

6. Doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and the defendant was concurrent, notes, Ann. Cas. 1912B, 888; 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379.

and ordinary care to extricate himself and vigilance on his part would not have averted the injury.

[8] ID.—DEATH OF MOTORCYCLE RIDER—COLLISION AT RAILROAD CROSSING—LAST CLEAR CHANCE—BURDEN OF PROOF.—In an action to recover damages for the death of the rider of a motorcycle who was killed while attempting to cross the main line track of a railroad ahead of a moving caboose and who was first seen by the trainmen when he was on a passing track about fourteen feet from the point of collision, the burden was upon the plaintiffs, who relied upon the doctrine of last clear chance, to show that the deceased had reached a point from which he could not escape by the exercise of ordinary care, either by stopping his motorcycle or by retarding or accelerating its speed.

[9] ID.—FAILURE TO SUSTAIN BURDEN.—In this action the plaintiffs having failed to show in evidence that the deceased could not have altered the direction, stopped, retarded or accelerated the speed of his motorcycle after the train crew first saw him on the passing track and thereby, of his own endeavor, have avoided the accident, the negligence of the deceased was contemporaneous, concurrent and continuing down to the very moment of the collision, and therefore the trial court was justified, as a matter of law, in granting the motion of nonsuit.

APPEAL from a judgment of the Superior Court of Yolo County. K. S. Mahon, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

George Clark and Black & Clark for Appellant.

Devlin & Devlin and Hudson Grant for Respondents.

LENNON, J.—This is an appeal by the plaintiffs from a judgment of nonsuit entered against them in favor of defendants in an action to recover damages for the death of one Frederick Bluhm, son of one of the plaintiffs.

Upon the first trial of the case, in which both the issue of contributory negligence on the part of the deceased and the doctrine of last clear chance were presented to the jury, the plaintiffs recovered. Upon appeal from the first judgment entered upon the verdict of the jury in favor of the plaintiffs and against all of the defendants, this court held that the undisputed evidence showed that the deceased was, as a matter of law, guilty of contributory negligence and that,

therefore, the issue of contributory negligence should not have been submitted to the jury. And inasmuch as some of the defendants manifestly could not in any view of the evidence be held liable for the death of the deceased, under the doctrine of last clear chance, the judgment was reversed because it was impossible to ascertain whether the verdict of the jury, against all of the defendants, was had in response to the charge of the trial court upon the issue of contribu. tory negligence or was predicated upon the applicability to all of the defendants of certain instructions, incidentally held to be erroneous, enunciating the doctrine of last clear chance. (*Young* v. *Southern Pacific Co.*, 182 Cal. 369 [190 Pac. 36].)

Upon a retrial of the case the court below upon the conclusion of plaintiffs' case granted a motion for a nonsuit upon the grounds in substance: (1) That the undisputed evidence conclusively showed, as a matter of law, that the deceased was guilty of contributory negligence; (2) That the doctrine of last clear chance could not be availed of to send the case to the jury because it was not shown in evidence that the deceased, when first observed by the train crew, had placed himself in a position of actual peril from which he could not extricate himself by the exercise of ordinary care. From the judgment entered upon the order of nonsuit the plaintiffs appeal.

[1] In support of the present appeal the point is again presented, rather by suggestion than positive contention, that the evidence was sufficient to warrant the sending of the case to the jury upon the issue of contributory negligence. The evidence upon the second trial, bearing upon the issue of contributory negligence, is practically the same as that presented upon the same issue at the first trial. This being so, the ruling of this court upon the first appeal "that the question of contributory negligence should not have been submitted to the jury" became the law of the case, and, therefore, binding upon the trial court and conclusive of the question upon appeal.

It is earnestly contended, however, that the trial court was in error in withholding the case from the jury upon the theory that the plaintiffs had failed to sustain the burden of affirmatively showing in evidence facts sufficient to war-

rant the invocation and application of the doctrine of last clear chance.

The plaintiffs'. case, as presented upon the second trial, was rested upon facts and circumstances which in so far as they are pertinent to the point of the applicability of the last clear chance doctrine are as shown by the record, now before us, substantially as follows: The deceased, Fr: ¹ C. Bluhm, while riding a motorcycle at right angles across the railroad tracks of the Southern Pacific Company at "Main Street railroad crossing," in the city of Woodland, was killed by coming into collision with a caboose which was being switched by the employees of the defendant railroad company. Main Street runs east and west through the city of Woodland and is crossed by three railroad tracks of the Southern Pacific Company; the most easterly being the passing track, the middle being the main line track and the third being the switch track. The main line track of the Southern Pacific, upon which the caboose, at the time of the collision, was being shoved in a northerly direction, runs straight north and south. The other two tracks converge slightly to the main line track in their course northerly across the street. The distance from the west rail of the passing track, at which point Bluhm was first seen by the trainmen, to the point of collision on the main line track was shown by actual measurement to be 13.8 feet. The width between the rails of the tracks was 5.1 feet. At the time of the accident the view of a person approaching from the east would be obscured by several box-cars left by the defendant railroad company on the passing track which projected into the street far enough to conceal from sight the switching of the caboose.

While the switching was in progress the deceased approached the crossing from the east on his motorcycle without making any effort to ascertain if there was danger at the crossing from moving trains. He approached the crossing at a speed of about six or eight miles an hour and while so doing a stationary electric bell was ringing, as was the bell on the engine. The engineer had just previously given two sharp whistle blasts. A friend of the deceased, following in a horse-drawn vehicle about forty or fifty feet behind the deceased, and who had heard the warning bells and observed the smoke from the engine,

shouted to the deceased: "Look out, Fred, you are liable
to get killed." As the deceased continued to approach
the crossing two other persons standing near the main line
track were wildly gesticulating at him. The actions of
these men attracted the attention of one of the brakemen,
who was standing on the right-hand steps of the caboose.
Sensing the fact that something was wrong, but not know-
ing why the men were waving their arms, the brakeman
looked both ways and then for the first time saw the de-
ceased. At the time when he was first seen by the brake-
man the deceased was on the passing track, shown to be
13.8 feet distant from the main line track, moving in a di-
rection which, if continued in, would carry him onto the
main line track and across the path of the oncoming train.
There was evidence to the effect that the northerly end of
the caboose, at that time, was only ten feet from the point
of the subsequent collision and moving at a rate of speed
approximating ten miles an hour. Upon seeing the de-
ceased on the passing track the brakeman waved and
shouted a warning at the deceased, and then gave the sig-
nal for the emergency brakes, which were instantly applied,
not because of the signal, but because the engineer, simul-
taneously with the brakeman, saw the approach of the de-
ceased. The deceased, despite the warning of shouts and
bell, continued on his course onto the main line track im-
mediately in front of the train. At that point the brake-
man first observed that the deceased seemed confused and
"looked as if he wanted to try and save himself." The de-
ceased was then on the easterly rail of the main line track
and about two feet in front of the oncoming train. At this
point the deceased, so the engineer and brakeman testified,
threw up his hands and either jumped or fell backward from
his motorcycle. It is an undisputed fact in the case that
the motorcycle, after the deceased left it, continued up-
right and uninjured on its course across the main line
track for a short distance and finally fell for lack of balance
and momentum, with its motor still running about two or
three feet from the west rail of the main line track.
However, upon this particular phase of the case there is
direct evidence that the deceased was knocked from his
motorcycle by the impact of the train and this evidence

must, for the purpose of testing the correctness of the ruling granting the motion for a nonsuit, be taken as true.

There is evidence tending to show that it would have been impossible to have stopped the train, traveling at the speed of ten miles per hour, within a distance of ten feet. It is insisted, however, that there is other evidence in the plaintiffs' case to the effect that the train was traveling at the rate of from four to eight miles per hour when deceased was first seen on the passing track and that deceased was then twenty or twenty-five feet from the main line track and that the end of the caboose at that time was thirty or forty feet from the point of subsequent collision. This latter view of the evidence is founded upon the testimony of the engineer and brakeman given at the former trial and embodied in their depositions taken after the accident. The testimony of these witnesses came into the case on the second trial primarily for the purpose of refreshing the memory of the witnesses and their depositions were offered and received in evidence upon the second trial, as original evidence. It was explained, however, by the engineer and brakeman upon the second trial, that the differences in their testimony relative to the speed of the train, the distance at which they first saw the deceased, and the distance at that time of the caboose from the actual point of collision resulted from the fact that their previous testimony was based only upon estimates which must give way in the face of the fact established by actual measurement that the distance from the passing track to the main line track was but 13.8 feet.

It is contended in support of the appeal that the physical facts of the case showing the distance of the train from the deceased at the time the deceased was first sighted at the passing track, the speed of the train, and the speed of the motorcycle would have warranted the inference and would have supported a finding by the jury that the engineer did not immediately nor at all apply the emergency brakes upon first sighting the deceased on the passing track; that respondents were under a duty to so apply the brakes; and that a failure to do so when the deceased was first seen on the passing track made the defendant liable, notwithstanding the contributory negligence of the deceased and that, therefore, the case should have gone to the jury upon

the question of fact as to whether the defendants failed to make immediate and effective application of the emergency brakes and thereby lost the last clear chance to avoid the accident.

Assuming without deciding that the testimony of the engineer and brakeman, relative to distances and speed as given at the first trial and as embodied in their depositions, was substantive evidence which tended to create a conflict in the evidence of the plaintiffs' case as to whether or not the emergency brakes were applied immediately upon the deceased being sighted by the brakeman and engineer, and taking such conflict in the evidence in the light most favorable to the plaintiffs' case, still we must hold with the trial court that, as a matter of law, the doctrine of last clear chance had no application to the facts of the plaintiffs' case.

The primary negligence of the defendants having been offset, as a matter of law, by the undisputed showing of the contributory negligence of the deceased, the burden was then upon the plaintiff, in order to avoid the nonsuit, to show that by the exercise of ordinary care the defendants, notwithstanding the contributory negligence of the deceased, could have avoided the accident.

[2] Assuming, as we have hereinbefore indicated, for the purpose of discussion and decision, that there was sufficient affirmative evidence in support of plaintiffs' case to the effect that the emergency brakes were not applied in time or at all, the question to be decided is whether or not it was the imperative legal duty of the defendants to apply the brakes immediately upon seeing the deceased on the passing track. The only evidence appearing in support of this phase of plaintiffs' case upon which the claim can be made and based that the deceased was in a position of peril when first sighted upon the passing track, is the testimony of the brakeman to the effect that upon first seeing the deceased he gave the signal for the emergency brakes which "means immediate danger." It is argued in effect from this that the trainmen were aware that the deceased was in danger of collision even before he came upon the main line track and that, therefore, it was the duty of defendants at the very instant that they became aware of the danger of collision to apply the emergency · brakes. This contention

cannot be maintained.  To do so we would be compelled
to hold that the doctrine of last clear chance came into play
before the deceased was in a position of peril from which
he could not have extricated himself by the exercise of
ordinary care.

[3]  The law presumes that a person possessing normal
faculties of sight and hearing must have seen and heard
that which was within the range of his sight and hear-
ing.  [4]  Absent-mindedness or forgetfulness will not
suffice as an excuse for the neglect of a person about to
cross a railroad track to look and listen for a possible ap-
proaching train.  And a person who attempts, regardless
of warnings, to cross in front of a moving train, even
though he be apparently in a condition of mental abstrac-
tion and consequently indifferent to the peril of his situa-
tion, is nevertheless negligent.  (*Chicago etc. R. R. Co.* v.
*Hedges*, 118 Ind. 5 [20 N. E. 530] ; *Lake Shore etc. R. R.
Co.* v. *Pinchin*, 112 Ind. 592 [113 N. E. 677] ; *Cones* v.
*Cincinnati etc. R. R. Co.*, 114 Ind. 328 [16 N. E. 638] ;
*Lake Shore etc. R. R. Co.* v. *Miller*, 25 Mich. 274 ; *Balti-
more etc. R. R. Co.* v. *Whitacre*, 35 Ohio St. 627 ; *Bruker* v.
*Covington*, 69 Ind. 33 [35 Am. Rep. 202] ; *Rogstad* v. *St.
Paul etc. R. R. Co.*, 31 Minn. 208 [17 N. W. 287] ; *Wood-
ward* v. *New York etc. R. R. Co.*, 106 N. Y. 369 [13 N. E.
424].)

[5]  So, therefore, the plaintiffs' case cannot prevail
unless it can be said that viewing the established facts in the
light most favorable to plaintiffs, the case falls within the
exception to the general rule which permits the defense of
contributory negligence to be interposed to an action for
damages resulting from the primary negligence of the de-
fendant.  This exception to the general rule is enunciated
in the doctrine of last clear chance which, as crystallized
into a settled rule of law, has for its basic principle the
humane proposition that even though a person by his own
negligence has placed himself in a position of peril, never-
theless, an injury to him inflicted in that situation by a
person knowing such peril will, strictly speaking, be con-
sidered as willfully and wantonly inflicted if it can be
shown that the injury could have been thereafter avoided
by the exercise of reasonable and ordinary care on the
part of the party inflicting the injury and if it could not

have been avoided by the exercise of ordinary care on the part of the injured party. More shortly stated, it is the exception to the general rule, relating to the defense of contributory negligence, that a showing of a failure to fulfill the duty of exercising reasonable and ordinary care to avoid injuring a person who is known to be in a situation of peril from which he cannot extricate himself by the exercise of ordinary care will render a defendant liable in damages for the resulting injury despite the previous negligence of the person injured. **[6]** This exception to the general rule, however, has no application to a situation where by their mutual carelessness an injury ensues to one of two parties, both of whom are contemporaneously and actively in fault down to the very moment of injury. (*Rowe v. Southern California Ry. Co.*, 4 Cal. App. 1 [87 Pac. 220]; *Denver City Tramway Co.* v. *Cobb*, 164 Fed. 41 [90 C. C. A. 459]; *Holmes* v. *S. P. Coast Co.*, 97 Cal. 161 [31 Pac. 834].) In other words, the doctrine of last clear chance excludes from the operation of its underlying princi*ple every case wherein it may be said that the negligence of the injured party was contemporaneous, concurrent, continuing and contributory with the negligence of the party inflicting the injury. (*Gilbert* v. *Erie R. Co.*, 97 Fed. 747, 752 [38 C. C. A. 408]; *Louisville etc. R. R. Co.* v. *Young*, 153 Ala. 232 [16 L. R. A. (N. S.) 301, 45 So. 238]; *Green* v. *Los Angeles Terminal Ry. Co.*, 143 Cal. 31 [101 Am. St. Rep. 68, 76 Pac. 719]; *Tobin* v. *Omnibus Cable Co.*, 4 Cal. Unrep. 214 [34 Pac. 124].)

**[7]** Obviously, if both parties to an accident could, by the exercise of ordinary care, have avoided it, neither can be said to have had the last clear chance. It is only when a defendant charged with the negligent infliction of the injury, knowing plaintiff's peril, could and the injured plaintiff could not have avoided the injury that the defendant is liable. The liability is placed upon the party inflicting the injury only if immediately before the actual infliction of the injury the injured person was in such a situation as to be unable by the exercise on his part of reasonable and ordinary care to extricate himself and vigilance on his part would not have averted the injury. (*French* v. *Grand Trunk Ry.*, 76 Vt. 441 [58 Atl. 722]; *Young* v. *Southern Pac. Co., supra.*)

[8] No evidence was offered in this behalf by plaintiffs, and the burden was upon them to show that deceased had reached a point from which he could not escape by the exercise of ordinary care, either by stopping his motorcycle or by retarding or accelerating its speed. (*Young* v. *Southern Pac. Co., supra.*) Indeed, the evidence leads to the conclusion that deceased, had he exercised ordinary care, could, when first sighted, have avoided the accident as easily as could the defendants. Deceased, when first sighted, was approaching the main line track upon a motorcycle the speed of which, nothing to the contrary appearing, could have been readily retarded, accelerated, or altogether stopped. It is a fair inference, and indeed the only inference from the evidence, that the slightest acceleration of speed of the motorcycle would have carried the deceased across the main line track free from the impact of the approaching train. True, a retardation of the speed of the train, at the time the deceased was first sighted, might also have permitted the deceased to have passed safely in front of the train. It is certain, however, that an acceleration or retardation by the deceased of the speed of the motorcycle would have avoided the collision. This conclusion is warranted and fortified by the fact that the motorcycle, after the deceased left it, proceeded upright under its own power free and clear of the impact of the train. And it must be conceded that an endeavor by the deceased to accelerate or retard the speed of the motorcycle would have been less difficult and more certain of success than an endeavor by the trainmen to retard or stop the speed of the train. And this is so whether the point at which the deceased was first sighted be 13.8 feet or 25 feet from the main line track. Indeed, if the latter point be the true one, as contended by the plaintiffs, then there is even less room for the application of the doctrine since the greater distance afforded the deceased increased opportunity to stop his motorcycle short of the point of collision.

The testimony of the brakeman to the effect that he signaled for the emergency brakes when he first saw deceased on the passing track and the giving of the signal for the emergency brakes meant "immediate danger" will not of itself suffice to show that the deceased at that time had placed himself in a position of danger from which he

could not have extricated himself. That is to say, while the testimony last referred to may have shown that the deceased, when first sighted, was approaching a position of danger, still it does not show that at that time he was in a position of inescapable danger. And until he was in a position of inescapable danger the trainmen were not obligated to apply the emergency brakes and, therefore, their application would have been the exercise of greater care than that called for by the law, for under the law they were required to exercise only ordinary care. With the warning bells ringing and men gesticulating at him, it was a fair inference that the deceased was aware or would become aware of the danger in time to save himself and, therefore, the trainmen were justified in believing that the deceased would slow down, stop or turn aside in time to avoid the collision. (*Young* v. *Southern Pac. Co., supra; Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359]; *Green* v. *Los Angeles Terminal Ry. Co.,* 143 Cal. 31 [101 Am. St. Rep. 68, 76 Pac. 719]; *Wallis* v. *Southern Pacific Co.,* 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408].) Of course, every person approaching a crossing at a speed which would bring him in collision with a moving train at the crossing is in danger and certain to be injured unless he accelerates his speed, slows down, or stops, or the engine does so. Therefore, in order to establish the fact that the deceased, when first sighted on the passing track, was in a position of inescapable danger, it was necessary as a part of plaintiff's case to show that the deceased could not have avoided the collision by altering the direction of his motorcycle, accelerating or retarding its speed, or that he could not have saved himself by jumping from it at some point before reaching the main line track.

There is nothing inconsistent with this view in the case of *Basham* v. *Southern Pacific Co.,* 176 Cal. 320 [168 Pac. 359]. A careful consideration of that case will show that it is very similar to the instant case in its statement of facts and the principle of law enunciated therein. The effect of a decision may not be extended by a reference to a single phrase but must be determined by a consideration in its entirety of the opinion in the case. When read and considered in its entirety, the case last above referred to did no more than reiterate the rule in vogue in this state that the doctrine of last clear chance cannot be invoked and

applied where both parties are continuously, contemporaneously, and actively in fault. The phrase "or was immediately about to enter the danger zone" found at page 327 of the opinion in that case was employed in a general discussion of the doctrine of last clear chance and must be taken as having reference to a position of danger where the person approaching is already in such close proximity to the danger point as to warrant the belief that he could not by any efforts of his own have avoided the impending danger.

The only point at which, in any view of the evidence, it can be said that deceased was in a position where he could not have avoided the accident, save by accelerating the speed of his motorcycle, is to be found within that space comprising the distance between the rails of the main line track plus the distance in which the motorcycle, considering the speed at which it was traveling, could not be stopped. And the deceased having arrived at that point without any prior endeavor on his part to avoid the train, it was then obviously too late for the defendants, save by the exercise of the most extraordinary efforts, to have prevented the accident.

[9] The plaintiffs having failed to show in evidence that the deceased could not have altered the direction, stopped, retarded or accelerated the speed of his motorcycle after the train crew first saw him on the passing track and thereby, of his own endeavor, have avoided the accident, it must be held that the negligence of the deceased was contemporaneous, concurrent and continuing down to the very moment of the collision. This being so, the plaintiffs failed to support the burden of proof put upon them by the law to show, as part of their case in chief, that the defendant had the last clear chance to avoid the accident. This, in effect, was the ruling of this court upon the first appeal of the instant case, upon practically the same facts presented upon the present appeal and, therefore, the ruling in the first instance constitutes the controlling law of the case. The trial court, therefore, was justified, as a matter of law, in granting the motion of nonsuit.

The judgment appealed from is affirmed.

Wilbur, J., Waste, J., Richards, J., *pro tem.*, Sloane, J., and Shaw, C. J., concurred.

LAWLOR, J., Dissenting.—I dissent.   Upon the former appeal I joined in the dissent on the ground that while the instructions on contributory negligence were erroneous, under the evidence the verdict might well have been based upon the doctrine of the last clear chance.   To this conclusion I still adhere.   I have not been able to convince myself that the former decision is susceptible of the interpretation put upon it by the majority opinion that it held, so as to become the law of the case, that the evidence was insufficient as matter of law to justify a verdict for the plaintiff under the doctrine of the last clear chance, although the law which would govern that issue on a retrial was declared.   As I have this view, and as the evidence on the retrial is of the same general import as that on the first trial, I think it was sufficient to have gone to the jury.