[Civ. No. 4875. First Appellate District, Division Two.—August 19, 1924.]

## CHARLES GARRISON, a Minor, etc., Respondent, v. BLANCHE PEARLSTEIN et al., Appellants.

[1] NEGLIGENCE — MUTUAL CONCURRENT NEGLIGENCE — LAST CLEAR CHANCE.—In an action for damages for personal injuries alleged to have been inflicted by defendants' automobile, it is error to instruct the jury that if the accident was the result of the mutual negligence of plaintiff and the driver of the automobile, the defendants were liable if they had a last clear chance of avoiding injury to plaintiff.

[2] ID.—LAST CLEAR CHANCE—PROPER CARE—ERRONEOUS INSTRUCTION. In such action, an instruction that "where one has placed himself in a dangerous position, and another has actual knowledge of his dangerous situation, and has a clear opportunity by the exercise of proper care to avoid injuring, he must do so, notwithstanding the injured person has placed himself in such situation of danger by his own negligence," does not state the law correctly when it makes use of the expression "proper care."

[3] ID.—OPPORTUNITY TO AVOID ACCIDENT.—In such action, it is error to instruct the jury that if the driver could have avoided the injury the defendants are liable although the plaintiff could likewise have avoided the injury.

[4] ID.—ERRONEOUS INSTRUCTIONS—APPEAL.—The appellate court will not lightly adopt the conclusion that instructions are subject to the attack under consideration, but the charge must be sustained affirmatively by the person making it.

---

1. Doctrine of last clear chance as affected by questions whether negligence of plaintiff or deceased and of defendant was concurrent, note, Ann. Cas. 1912B, 888; 7 L. R. A. (N. S.) 132, 152; 27 L. R. A. (N. S.) 379. See, also, 19 Cal. Jur. 657; 20 R. C. L. 141.

2. See 19 Cal. Jur. 760.

4. See 2 Cal. Jur. 699.

[5] ID.—USE OF STREETS—CARE REQUIRED.—It is the duty of a pedestrian, and it is the duty of the driver of an automobile, while using the streets, to use ordinary care under the circumstances involved in the case, and they are not bound to use the utmost care.

[6] ID.—PRIOR WRITTEN STATEMENT BY WITNESS—IMPROPER EVIDENCE.—In this action for damages for personal injuries alleged to have been inflicted by defendants' automobile, notwithstanding it transpired on the cross-examination of one of the witnesses, who was near by at the time of the accident, and who had testified on direct examination as to what she saw, that she had made a different statement, and, upon the request of one of the attorneys for defendant, counsel for plaintiff produced a written statement made by such witness shortly after the accident, it was error to overrule defendants' objection to the offer of such written statement in evidence on the ground that it was incompetent, irrelevant, and immaterial and self-serving; but such ruling, standing alone, was not a prejudicial error.

[7] ID.—COMPETENCY OF DRIVER—ISSUES—EVIDENCE.—In such action, the plaintiff by his pleadings not having tendered any issue that the driver was incompetent, the trial court should have sustained defendants' objections to questions addressed to the driver, while a witness, as to her qualifications to act as a driver and as to her familiarity with the traffic regulations; but the appellate court could not say that prejudicial error resulted from the action of the trial court in overruling such objections.

[8] ID.—STATEMENTS OF DEFENDANT—PROOF BY HEARSAY.—In such action, the trial court should have sustained defendants' objections to the testimony of the owner of a truck which immediately preceded defendants' car along the street as to what the driver of said truck told him had been stated by one of the defendants following the accident.

(1) 29 Cyc., p. 655 (Anno.).   (2) 29 Cyc., p. 655 (Anno.).   (3) 28 Cyc., p. 49.   (4) 4 C. J., p. 767, sec. 2710.   (5) 28 Cyc., pp. 28, 29.   (6) 4 C. J., p. 970, sec. 2952; 22 C. J., p. 895, sec. 1091.   (7) 31 Cyc., p. 680.   (8) 22 C. J., p. 199, sec. 167.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   E. P. Shortall, Judge. Reversed.

5. Rights and duties of pedestrians and vehicles in highways, notes, 4 Ann. Cas. 398; Ann. Cas. 1914A, 249; Ann. Cas. 1916E, 661.   See, also, 3 Cal. Jur. 871.

6. See 2 Cal. Jur. 1020; 2 R. C. L. 247.

8. See 10 Cal. Jur. 1033; 3 Cal. Jur. 967; 10 R. C. L. 958.

The facts are stated in the opinion of the court.

Louis V. Crowley, Ford & Johnson and Harry I. Stafford for Appellants.

Rufus H. Kimball and Arthur L. Shannon for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to obtain a judgment for damages alleged to have been caused by injuries inflicted by an automobile. The jury brought in a verdict in favor of the plaintiff and from the judgment entered thereon the defendants have appealed.

At about 3 o'clock in the afternoon on the twelfth day of January, 1922, the collision occurred on the east side of Ashbury Street between Waller and Haight Streets, in San Francisco. The plaintiff had been attending school on Ashbury Street and had left school and was on his way home. He passed down the west side of Ashbury Street from Waller toward Haight Street. After leaving Waller Street he crossed diagonally toward the east side of Ashbury. When he was out in the street and slightly on the east side of it an automobile came down the street on the right-hand side. The automobile was being driven by Marie Louise Pearlstein, and her mother, Blanche Pearlstein, was sitting in the front seat by her side. Mr. Pearlstein and Mr. Poole, a visitor from Chicago, were seated on the back seat. As the automobile proceeded down the street an impact occurred between the plaintiff and the automobile. It was the theory of the plaintiff that he had proceeded to a certain point and stopped in the street looking at a truck that was slightly in front and a little farther down the street, and that the automobile ran up against him and caused the injury. On the other hand, it was the theory of the defendants that the plaintiff walked, or ran, into the side of the automobile, hitting the same on the left rear fender and by the impact or fright was caused to fall down. According to the testimony of the various witnesses called by the parties, the automobile was proceeding at the rate of ten or twelve miles per hour. At least one of the witnesses testified that it was being driven in second gear. The witnesses also agreed that

the horn of the automobile was not blown.  Charles Garrison as a witness testified: "I did not see this automobile at any time, not even when it hit me.  I first saw it when I got into the machine."  Forest Peterson, a boy slightly under thirteen years of age at the time of the accident, testified that the plaintiff ran into and against the front left fender about two or three feet back from the front.  He was the only other eye-witness called by the plaintiff.

After the accident, and on the same day at the emergency hospital, Clarence Byrne, a police officer, talked to the several members of the Pearlstein party.  On the trial he testified: "I asked Miss Pearlstein how the accident happened.  She said Mr. Poole, who was a stranger in town, was staying at the St. Francis and that they had been up to Twin Peaks and were coming down Ashbury Street, and she said the first time she noticed the boy was when the boy came from behind a coal truck and the boy at that time was about twenty-five feet in front of them.  I said, 'Was he running?' she said, 'No, he was standing still looking at the coal truck.'  I said, 'Did you blow your horn to give the boy any warning?' she said 'No, sir.'  I said, 'When you saw the boy did you try to avoid the accident by stopping, or did you pull to the other side of the street, there was nothing to stop you,' she said, 'No; I guess I got excited at the time the accident happened.'"  On cross-examination the officer testified: "She stated the first she saw, the boy was, the boy was about twenty or twenty-five feet in front of them and that she thought he was looking at a coal truck, he was standing in the center of the street; I asked her, 'How fast were you going?' she said, 'About fifteen to twenty miles an hour.'"

Mrs. Pearlstein testified that she was seated at the right of the driver and had turned her head toward the left to speak to Mr. Pearlstein and Mr. Poole, and while in that position she saw the boy approach the left side of the car.  Marie Pearlstein testified that as she proceeded down the street she was looking toward the front and straight ahead and that she did not see the boy at any time nor at the side of the automobile.  She stated that her attention was first attracted to the boy when her mother said, "Look out! a boy," and that she thereupon stopped the car.  No other

evidence was given by an eye-witness. No evidence was introduced as to how soon, or in what distance, the driver of the automobile could stop the car on a street having the grade that Ashbury has between Waller and Haight when the car was traveling ten or twelve miles an hour, or when it was traveling twenty to twenty-five miles an hour.

The appellants complain of certain instructions given by the trial court, of the failure of the trial court to give certain requested instructions and of the rulings of the trial court in admitting certain evidence. The defendants tendered a proposed instruction which the trial court modified and then gave. The modification consisted of certain words written at the end of the instruction and which we have italicized: "If you believe from the evidence that the accident complained of was due to negligence, both upon the part of the driver of the automobile, and likewise upon the part of Charles Garrison, and that such negligence, if any, of both the driver and the boy proximately contributed to the injury, then I instruct you that the plaintiff is not entitled to recover in this action and your verdict must be in favor of the defendant, *unless you find that the defendants had a last clear chance of avoiding injuring Charles Garrison as defined in these instructions.*" The only other instruction coming within the expression "as defined in these instructions" was one given at the request of the plaintiff and which was worded as follows: "Where one has placed himself in a dangerous position, and another has actual knowledge of his dangerous situation, and has a clear opportunity by the exercise of proper care to avoid injuring, he must do so, notwithstanding the injured person has placed himself in such situation of danger by his own negligence." [1] The first instruction was a clear statement to the jury that if the accident was the result of the mutual negligence of the plaintiff and the driver, the defendants were liable if they had a last clear chance of avoiding injury to the plaintiff. In the case of *Young* v. *Southern Pac. Co.*, 189 Cal. 746, at page 755 [210 Pac. 259, 262], speaking of the application of the doctrine of last clear chance, the court said: "This exception to the general rule, however, has no application to a situation where by their mutual carelessness an injury ensues to one of two parties, both of whom are contemporaneously and

actively in fault down to the very moment of injury. (Citing cases.) In other words, the doctrine of last clear chance excludes from the operation of its underlying principle every case wherein it may be said that the negligence of the injured party was contemporaneous, concurrent, continuing and contributory with the negligence of the party inflicting the injury." [2] The second instruction above set forth does not state the law correctly when it makes use of the expression "proper care." That subject was so fully discussed on the first appeal in the case entitled *Young* v. *Southern Pac. Co.*, 182 Cal. 381 [190 Pac. 36], that we need not pause at this time to discuss the subject again. If by the use of the expression "proper care" the trial court meant "ordinary care," then the trial court should have used that language or otherwise it should have given an additional instruction. As it was the jury were left to speculate as to what was "proper care." Continuing to instruct on the same general subject, the trial court stated as follows: "In other words, if you find the plaintiff, Charles Garrison, in crossing Ashbury Street immediately prior to the happening of the accident, had placed himself in a dangerous position, of which he was obliviously unconscious, notwithstanding this fact, if you further find that the defendant, Marie Louise Pearlstein, while driving said automobile knew that the plaintiff was in such position of danger on said Ashbury Street, and by the exercise of proper care could have brought the automobile to a stop, or have avoided striking said Charles Garrison, either by sounding her horn, or turning aside, but failed to do so and as a consequence struck plaintiff with said automobile, then I charge you that the defendants are responsible for the plaintiff's injuries, if any, proximately caused thereby, and your verdict should be in favor of plaintiff." A study of the last instruction discloses that it is subject to the same objection made to the other two instructions—that it combines all of those objections. [3] Moreover, the last instruction purports to state that if the driver could have avoided the injury the defendants are liable although the plaintiff could likewise have avoided the injury. This is not the law. (*Young* v. *Southern Pac. Co.*, 189 Cal. 746, 755 [210 Pac. 259].)

Instructions, not numbered but covered by exceptions 21, 26, and 29, are objected to. It is claimed each assumed certain facts as existing. A careful reading shows each to be abstract statements of law, wholly impersonal, and not assuming any fact. [4] The courts do not lightly adopt the conclusion that instructions are subject to the attack under consideration. The charge must be sustained affirmatively by the person making it. We cannot say, in this instance, that the charge is sustained.

In another place this occurred: ''The court instructs the jury that the degree of care required of the defendants while driving the automobile where Charles Garrison was injured was commensurate with the known danger of the particular situation and circumstances at the time of the accident.'' As shown above all the defendants claimed that they did not even know of the presence of the . boy until he hit the side of the automobile. If we take into consideration the testimony of Officer Byrne, and if we then assume that the instruction just quoted was intended to state to the jury that the driver of the automobile was obligated to use the utmost care, then it is clear that the instruction was an incorrect statement of the law. [5] It was the duty of the plaintiff, and it was the duty of the defendants, while using the streets, to use ordinary care under the circumstances involved in the particular case, and they were not bound to use the utmost care. The point was directly decided in *Busch* v. *Los Angeles Ry. Co.*, 178 Cal. 536, 540 [2 A. L. R. 1607, 174 Pac. 665].

Other objections are made to other instructions, and some of the objections are not without merit, but we think it will unnecessarily prolong this opinion to discuss them, the errors committed in instructing the jury on the doctrine of last clear chance being of such serious consequence as to necessitate a reversal of the case.

[6] Frances E. Doyle was near by at the time of the accident. Shortly thereafter she signed a written statement regarding what she saw, and delivered the paper to plaintiff's attorney. On the trial of the case she was called as a witness. She testified on her direct examination as to what she saw and gave testimony regarding certain distances. On cross-examination it transpired that she had made a

different statement. Later, upon the request of one of the attorneys for defendants, the writing was produced by the attorney for the plaintiff. Just before the witness left the stand the attorney for the plaintiff offered the written statement in evidence. An objection was made that it was incompetent, irrelevant and immaterial and self-serving. The objection was overruled and the writing was read in evidence. The ruling was erroneous, but standing alone possibly was not a prejudicial error.

[7] While the driver of the car was a witness many questions were addressed to her as to her qualifications to act as a driver and all of which were addressed to her familiarity with the traffic regulations, no one of which was an issue in the case, nor had the plaintiff by his pleading tendered an issue that the driver was incompetent. The objections to these questions were overruled, whereas they should have been sustained, but we are not prepared to say that prejudicial error resulted.

[8] While Charles S. White, the owner of the truck above mentioned, was a witness on the stand he was asked questions regarding what the driver of the truck told him had been stated by Mr. Pearlstein. Objections were made that the questions called for hearsay. The objections were clearly sound and should have been sustained, but the answers were hardly prejudicial.

For the errors committed in giving the instructions hereinabove quoted the judgment is reversed.

Langdon, P. J., and Nourse, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 16, 1924.