[Civ. No. 14350.   Second Dist., Div. One.   Apr. 26, 1944.]

EVA K. SPEYER et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a corporation) et al., Respondents.

Wendell W. McCanles for Appellants.

Frank Karr, C. W. Cornell and O. O. Collins for Respondents.

DORAN, J.—In this action for damages based on the alleged negligence of defendant, the court, at the close of

plaintiffs' case, granted defendants' motion for a nonsuit and, from the judgment that followed, plaintiffs appeal.

The pertinent facts are as follows: Edwin J. Speyer was driving an automobile west on Highway No. 60 at a point a short distance east of Ontario, where the Southern Pacific Railroad tracks cross the highway at right angles. The automobile collided with defendants' locomotive which was crossing the highway, resulting in the death of Edwin J. Speyer and the injury of his brother, who was with him. The accident occurred at 3:40 p. m.; the weather was clear.

It is appellants' contention, first, that the doctrine of last clear chance applied and that the appropriate question in connection therewith should have been submitted to the jury; second, that the evidence supports the fact, as alleged in the complaint, that defendant operated the locomotive in a wilful, wanton and reckless manner; and, third, that the question of contributory negligence should have been submitted to the jury as well.

■ The record reveals no salient or impressive conflict in the evidence. It appears from the record that deceased, when about 200 feet from the railroad crossing, passed a truck traveling in the same direction. In this connection, appellants' brief recites the evidence as follows: "The truck which deceased passed while approaching the track was driven by Max W. Fischer a poultryman from El Monte, California. It was a G.M.C. one ton truck with a six by eight bed filled with poultry four crates high and more than ten feet from the ground. It completely obscured the engine from the occupants of the automobile while passing.

"Fischer testified he had been driving the truck at about 25 miles per hour. That he was about 300 feet from the track when he first noticed the engine. That it was standing 15 to 20 feet north of the highway. That when he got within 200 feet of the track and about the time deceased's automobile passed him he saw the engine pass slowly by a light post some 10 or 12 feet north of highway.

" 'Q. Now when you first saw the locomotive where was it with respect to the highway? A. The first I noticed it was 15 or 20 feet from the highway. Q. What did you observe about it. Was it moving or still or what? A. It looked to me in the beginning it was standing still, and then it started to move a little. Q. How far in your judgment was your truck

from the railroad track when the automobile went around you? A. I would say about 200 feet somewhere around there. Q. Now I want to ask you this, Mr. Fisher; before that locomotive started 15 or 20 feet, did it sound any whistle? A. No, sir. Q. Did you hear any bell? A. No. The Court; You didn't hear any noise indicating that the locomotive was starting up, is that right? A. That is right. I didn't hear anything. I thought they were stopped. Q. State whether or not before or after the accident there was any man walking along in front of the engine as it went across the highway? A. No there was not. Nobody walked.'

"On cross-examination Fisher testified:

" 'Q. You were about 300 feet from the track when you first saw the locomotive? A. It was about 300 feet. Q. At that time you couldn't determine whether it was moving or not? Is that right? A. I thought it was standing. Q. Then you watched the locomotive? A. Starting up. The Court: And at the time you saw the train moving? In other words you saw it pass this pole—is that right? A. No, when I was here—(indicating). The Court: How far away? A. About 200 feet.'

"As to what happened after the locomotive passed the light pole and just prior to the collision Mr. Fisher was apparently confused and somewhat uncertain. In answer to the question as to what took place after the auto passed his truck he said: 'A. Well, from that time on all I did, I watched the engine, and I seen the collision and that is all I seen, but they run right into the engine and eventually my truck stopped about 60 or 65 feet from the track, and I ran off the edge to give them assistance.' "

With regard to the testimony of the engineer and fireman of the locomotive, appellants' brief contains the following:

"The fireman and engineer denied that the locomotive stopped but said that it approached the highway slowly at a rate of from three to five miles; that when the automobile swerved around the truck the nose of the engine was just entering the highway. That the fireman hollowed stop twice. That the engineer did everything he could to stop. That although the brakes were in good condition and the engineer had his hand on the air brake, the power already shut off, and the engine coasting on a dry track almost level, the train traveled a distance of forty-one feet before he could stop it.

"Fireman Edwards testified: 'Q. And you first noticed

the automobile, you said, about the time it started around the truck. Where was it? A. No I noticed it just behind the truck, say, about 40 or 50 feet.' Again he testified, 'I saw it continually in my view as it was swerving around the truck.' 'Q. Now about how far down to the east was the truck from the railroad track when you first observed the automobile go around it? A. Well it was between 150 and 175 feet when he started around the truck. Q. Well now why did you holler and tell him to stop? A. Well, when he swerved around the truck I assumed that he didn't see the railroad tracks or had an idea that we were approaching the crossing. Q. And that is why you hollered? A. Yes.' As to the speed of the automobile he testified: 'Q. Can you give us an estimate of how fast the automobile was traveling? A. No. Q. Well, can't you give us your best estimate? You saw the car coming from some distance? A. Well, it was a high rate of speed and I should judge it was between 50 and 60 miles an hour.' He testified that when it first went around the truck it speeded up. Edwards continued—As to the speed of the locomotive as it approached the track he testified: 'Q. As you approached the highway you were running from 3 to 5 miles an hour weren't you? A. Approximately.' ''

The foregoing is the evidence upon which appellant relies to support the above mentioned three contentions on appeal. It should be noted in that connection, that Orren A. Clark, a traffic officer, who appeared at the scene of the accident shortly after it occurred, testified that the skid marks of the automobile extended easterly from the point of contact with the locomotive a distance of one hundred four feet; that said skid marks were all on the south side of the center line of the highway. Also, it appears from the testimony of the fireman and engineer that every effort was made to stop the locomotive when a collision seemed imminent or probable.

Approaching from the east, photographs in evidence show the view of the crossing to be unobstructed for a considerable distance both north and south of the highway. The hazard was indicated with large crosses and warnings painted on the surface of the highway at the usual distance from the crossing and at the tracks the familiar cross arms were erected.

It is at once evident from the foregoing summary that the doctrine of last clear chance does not apply and that appellants' contention in this regard cannot be sustained. See

*Guyer* v. *Pacific Elec. Ry. Co.*, 24 Cal.App.2d 499 [75 P.2d 550]; *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 P. 259].

█ With regard to appellants' second contention, namely, that defendant operated the locomotive in a wilful, wanton and reckless manner, the following argument is offered, "It is difficult to conceive of a more wanton, wilful, flagrant and culpable act of misfeasance on the part of the defendants than that disclosed from the evidence in this case. In broad daylight on a bright clear day, deceased operating an automobile on a U. S. Highway, at a lawful rate of speed, approaches a railroad crossing; sees a locomotive standing a safe distance from the highway; passes a truck traveling in the same direction; and while going around the truck 150 to 175 feet from the track, wholly unawares and oblivious of any danger, the locomotive starts up slowly at first and then with greatly increased speed, suddenly sweeps out in front of the automobile completely obstructs the path of the automobile which the driver is unable to stop by the exercise of ordinary care, a collision occurs, and the life of the driver immediately snuffed out. From the beginning to the end of this tragedy the defendant's fireman saw the approaching automobile, estimated its speed, was aware of its proximity to the track, its situation of danger and peril, and the inability of the driver to escape death or injury."

"In the case at bar when the fireman saw the exposed position of the automobile driven by deceased his negligence in causing, allowing and permitting the locomotive to be started suddenly forward without any signal of warning completely obstructing the path of the oncoming automobile at a time when it was apparent to him that the automobile could not stop, clearly constituted wanton, wilful and reckless conduct."

The argument is zealous, but, in the light of the record, is not persuasive. No act on the part of defendant is assigned as unlawful or in violation of any rule or regulation. And the mere characterization of certain conduct as wanton and reckless does not make it so. The trial court evidently reached such a conclusion, for there is nothing in the record on appeal supporting such contention but the aforementioned argument. The decisions cited are not in point.

Assuming, however, but only for the sake of argument, that the conduct of defendant presented an issue of negligence proper for the jury's consideration, nevertheless, the conclu-

sion is inevitable in the circumstances, that the trial court determined that the driver of the automobile was guilty of contributory negligence as a matter of law. The record supports such a conclusion. The order granting defendant's motion therefore was proper.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied May 4, 1944, and appellants' petition for a hearing by the Supreme Court was denied June 22, 1944. Edmonds, J., and Carter, J., voted for a hearing.