HOUSTON et al. v. THE GATE CITY STREET RAILROAD CO.

Whether a person who attended a child in boarding a street-car on a particular occasion, for the purpose of placing upon the car small packages which the child was to have in charge, had frequently before done the same thing at the same place when the same driver of the car was on duty, is admissible evidence as tending to show that the person on this particular occasion intended to get off after depositing the packages, as she had done on the previous occasions, and did not intend to remain on board so as to justify the driver in starting the car suddenly while she was engaged in getting off. It being the duty of the driver (there being no conductor) to take notice of all persons entering the car, his knowledge that the plaintiff did enter it in this instance might be inferred ; and if he knew that she had withdrawn from the car and alighted in numerous previous instances under like circumstances, it could be inferred that he knew or ought to have known that such was her intention on the occasion in question. The court erred in excluding evidence of the previous instances, and consequently in granting a nonsuit.    Judgment reversed.
May 16, 1892. By two Justices.

Street railroads. Negligence. Evidence. Nonsuit. Before Judge VAN EPPS. City court of Atlanta. September term, 1891.

An action was brought by Lucretia Houston and her husband against the street railroad company for damages arising from personal injuries to her. A nonsuit was granted, and upon this ruling is the main assignment of error. Exceptions were taken also to the rejection of testimony, and these will be noted further on.

The declaration alleged that, about six o'clock in the afternoon of March 29, 1890, Lucretia Houston was on the defendant's car seating a small boy with a tray of provisions to be carried by the car, which was her custom and so known to be by the defendant's agents and servants; that the driver of the car stopped to allow her to put the boy and tray on the car and put his fare in the box, which was her custom and which custom was known to defendant's agents and servants; and that, while she was in the act of leaving the car and before she had put her foot on the street, the driver, though knowing that she was in the act of leaving the car and that it was her purpose when she got on to deposit the boy and tray and then get off, instead of giving her time to leave the car, suddenly and violently started it without warning or notice to her, and threw her into the street, whereby she was seriously injured. The ground on which the nonsuit was granted was, that there was no evidence that the driver in this instance knew she intended to get off before the car resumed its journey, nor that he knew she was engaged in an attempt to get off when it did resume it.

In the testimony of Lucretia Houston the following appears: "I will be 47 years old on the 4th day of Oct., 1891. On the 29th day of March, 1890, I was cooking for Lizzie Alexander on Wheat st. She was running a restaurant, and furnished meals to four young men. . . The meals were sent on Saturday nights. About 6 o'clock in the evening on the 29th of March, 1890, I waved down the driver of a street-car in front of the restaurant, for the purpose of putting the buckets that contained the meals, and a little boy . . about eleven years of age, on the car. The meals were to be carried . . by the little boy. I had put these meals and the little boy on the car once or twice before. I had put him on mighty nigh every Saturday evening. The Sat-

v 89-18

urday evenings that I did not put him on, Lizzie Alexander or Henrietta Perry did it. I went out for that purpose. I knew the driver of that street-car. He was boarding at the restaurant at the time, and I had put the boy and the buckets on that car exactly like I did that Saturday night. I was not going to go myself but was going to put the boy on the car and get off, which was my usual custom, and the driver knew it. As I was just leaving and was about to step down, the driver struck the mules and they moved off. I was getting off the back platform, the way I went in at with the victuals. I waved him down and he passed by me, and when he stopped I got on at the back end. He stopped the car still before I got on. When I got on I had the bucket in my hand, nothing else. I put the bucket and the boy on the car, the boy going in ahead of me. I set the bucket down in the car and turned to go out. As I went to make the step down I was thrown off and injured. ˙ . . I put the boy on the car with the provisions to send it . . like I always does on Saturday nights, and when I turned round to come out the driver struck the mules and throwed me. . . I had my hand on the back dashboard and was putting this foot to the ground, and just as this foot hit the ground the driver struck the mules, and that throwed me off kind of sidewise like. The right foot was on the step. . . . When I went into the car I had nothing on my head. Mr. Christian was driving the car. He saw me and I saw him. . . He was driving it when I first went there [five or six months previously], and I had been sending meals . . ever since I had been at the restaurant. Sent them only every Saturday night. The meals were generally put on Mr. Christian's car, No. 5, nigh every time. . . I went to put the meals on the car with the buckets, and just as I went inside and made the boy sit down, and as I went to go out and was in

the act of making the step down and put this foot to the ground, the driver struck the mules and throwed me off. I had two buckets and a coffee-pot. I put them down just inside the door, on the right-hand side of the door, the side that the restaurant was on. The boy paid his fare himself. I saw him do so before I set the buckets down. When he came back to where the buckets were, I was standing waiting at the door so I could give him the coffee-pot, and when he sat down I handed it to him and turned round to go out. I did not sit down. There was only one step from the top to the ground. As I left the car my right hand was on the iron, the dashboard, and my left was down by my side. I was just fixing to make the step on the ground when he struck the mules. The car just passed the door, and I signalled to him and he stopped, and then I got on. Mr. Christian was standing on the front part of the car as I got in the back part. The entire car was between us. I heard him when he struck the mules, did not hear him say anything to them. Did not ring the bell, did not say anything to him at all to stop because I knowed he knowed I was on there. . . The car stood there long enough for the boy to go and pay his fare and come back. . . On every occasion I sent the meals on Mr. Christian's car. I selected his car because we knowed him generally better than the rest, and he has been to his meals there most. . . The car was a shut up car, made of wood and iron, door at each end, glass windows in each door; both sides had glass windows. Could see through the car. I could see the driver from the back platform, and he could see from the front platform to the back platform. Could see through from one platform to the other."

In the testimony of the little boy appear these statements: "When Lucretia stepped on the street-car she put the bucket inside the car, and when she turned

round to get off, that man struck the mules and made them get up and threw her off. . . I was sitting down inside the car when he struck the mules. I was not in there no time. When I went in I sat down. I put in the fare after I sat down, in the box next to the driver. . . I had been going with the suppers . . on Saturday nights almost all the year, and I generally got on Mr. Christian's car. It looked like every time when I would go to catch a car I would catch his car. Mrs. Houston generally put me on the car. She would just take me by the hand and lift me on the car, and she would put the buckets and coffee-pots on. On the night the man struck the mules she did not stay on the car two minutes. She usually did not stay there no time. . . The car did not stop after she was thrown off. The car was going fast when she waved it down. When the driver hit the mules they started off fast and went to trotting. . . The street was lighted. . It was an electric light. . . She put me on the car first ; helped me by my hand. She reached her hand in and set the bucket and coffee-pot down, and she turned to get off, and Mr. Christian struck the mules and made them get up and threw her off. . She had the bucket and the coffee-pot both in her left hand. She was standing on the platform. She reached her left hand round and put them on the floor. When I first went in I sat down and jumped up and put the nickel in the box. . . I did not sit there a minute before I put the nickel in. . . ”

Lizzie Alexander testified : “On this Saturday night a man by the name of Christian was driving the car. She waved him down and stopped him and put the boy on, and he paid his fare. She had the buckets in her hand. I then turned round from the door and went back into the kitchen after the car stopped and she put the boy on, and she did not come right back, and I

needed her, and I went to the door to see what was the matter, and I went to the door and she was leaning against the post, and I asked, 'What is the matter?' She could not speak, and I said, 'What is the matter?' and she said, 'Don't take hold of my arm; my arm is hurt.'" On objection this last statement was excluded; and the court also refused to allow Lucretia Houston to testify what she stated to Lizzie Alexander just after Lizzie had assisted her into the restaurant and asked how she was hurt. The plaintiffs insist that each of these statements was competent as part of the *res gestæ*.

The court refused to allow Lizzie Alexander to testify what length of time Christian had been driving the defendant's car. The plaintiffs contend that the testimony was competent as a fact or circumstance tending to show knowledge on the part of defendant's servant that Lucretia Houston went on his car for a special purpose, and intended to get off before he started the car. A like assignment of error is made upon the exclusion of the testimony of the little boy, that Lucretia Houston "usually got on and off the hind end" of the car. For the same reason the plaintiffs except to the exclusion of the testimony of Lucretia Houston, given on cross-examination, that the reason she did not ring the bell or speak to the driver to stop was, that she knew he knew she was on the car.

WESTMORELAND & AUSTIN, for plaintiffs.
JOHN L. HOPKINS & SON, for defendant.