DUNWORTH v. GRAND TRUNK WESTERN RY. CO.

(Circuit Court of Appeals, Seventh Circuit. October 24, 1903.)

No. 959.

1. CONTRIBUTORY NEGLIGENCE—TRIAL—DIRECTION OF VERDICT.

Where, in an action for death resulting from defendant's alleged negligence, it followed as a necessary conclusion and as a matter of law, from the facts disclosed, that deceased was guilty of contributory negligence, and that there could be no recovery under any proper view of the facts, it was the duty of the trial court to direct a verdict for the defendant.

2. SAME—RAILROADS—CROSSINGS—INJURIES TO PEDESTRIANS.

Where a street car conductor left his car at a railroad crossing, and went on the track to see if it was clear, and on seeing a train approaching on one of the tracks stepped back onto another, and stood there waiting for the train to pass, when he was struck and killed by a train approaching from the rear on such track, which he could have seen if he had looked, and there was unobstructed space of 10 feet between the crossing gates and the first track in which he could have stood in safety, he was guilty of contributory negligence as a matter of law.

3. SAME—NEGLIGENCE OF DEFENDANT—STATUTORY REGULATIONS—NONCOMPLIANCE.

Where deceased, who was killed while standing on a railroad crossing, was guilty of contributory negligence as a matter of law, the fact that defendant was at fault for noncompliance with statutory regulations did not preclude it from relying on the defense of plaintiff's contributory negligence.

**4. SAME—PROXIMATE CAUSE.**

Where, in an action for death of plaintiff's intestate at a railroad crossing, it did not appear that decedent's presence on the track was observed by the locomotive engineer, or that after seeing him, and after knowledge that he was unobservant of his danger, there was time to avoid the catastrophe, defendant was not liable, notwithstanding plaintiff's contributory negligence, on the ground that by the exercise of ordinary care defendant might have avoided the consequences of decedent's negligence.

Grosscup, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This action is brought by the plaintiff to recover damages sustained by reason of the death of her intestate, caused, as alleged, by the wrongful acts of the defendant at a street crossing of its railway. The negligence charged was that the bell of a locomotive engine approaching and crossing South Halsted street was not rung or its whistle sounded, that no headlight was exhibited, and that the gates were not lowered. There was a plea of the general issue. At the trial, upon the conclusion of the evidence for the plaintiff, the court directed the jury to render a verdict for the defendant, for which supposed error the cause is brought here for review.

The two tracks of the defendant's railway running east and west intersect Halsted street, in the city of Chicago, at right angles, and for a long distance the tracks are straight. The north track is used by west-bound trains; the south track by east-bound trains. Ten feet south of the south rail of the south track are gates, and from eight to ten feet south of the gates, and on the west side of the street, is a small station. From this station the view to the west along the tracks is unobstructed, the space between the south rail and the gates and the station being unoccupied. At the west line of the street there is a switch track which curves to the south, and then to the west, running for some distance parallel to the south track, about on a line with the station house. The street car line of the Chicago City Railway Company located upon Halsted street crosses these railway tracks. The deceased was a conductor in the service of that company. The car upon which he served was on a trip north, and had come to a stop south of the railway gates, to allow the conductor to go forward, according to his customary duty, to ascertain if the way was clear and to signal the car when the way should be clear. The evidence is contradictory whether the gates were lowered before Dunworth went upon the crossing. As he passed the gates a west-bound freight train was approaching Halsted street from the east upon the north track, and was some 300 feet away. Dunworth went to the north track, and, in the language of a witness for the plaintiff, "when the conductor saw the gates coming down and the train approaching he came back to the south track and stood on the track." He took a position between the rails of the south track, where he remained for from two to four minutes, looking northeast and north, watching the freight train as it approached and was passing. At this time an engine coming from the west approached on the south track at a speed of eight miles an hour, backing up, its bell not being rung or its whistle sounded, and without a headlight on the tender of the engine, and struck and killed Dunworth. This was before the freight train had passed. The time was December 4, 1901, at about 7 o'clock in the evening. The night was dark, but the ground was covered with snow to a depth of two inches, making "it look quite light." The locality was also lighted by an electric arc light suspended over the center of Halsted street.

James Hamilton Lewis, for plaintiff in error.

Kenesaw M. Landis, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). If the facts, or the inferences to be drawn from them, with respect to con-

tributory negligence, be doubtful, the case is one for the jury.   But if from the facts disclosed the conclusion follows as a matter of law that there can be no recovery in any proper view of the facts, it is the duty of the trial court to direct a verdict.   Schofield v. Railway Company, 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railway Company v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Railway Company v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Gardner v. Michigan Central Railroad Company, 150 U. S. 349, 361, 14 Sup. Ct. 140, 37 L. Ed. 1107; Warner v. Baltimore & Ohio Railway Company, 168 U. S. 339, 348, 18 Sup. Ct. 68, 42 L. Ed. 491; District of Columbia v. Moulton, 182 U. S. 576, 579, 21 Sup. Ct. 840, 45 L. Ed. 1237.

The facts in the case at bar are without contention, and were disclosed by the evidence of the plaintiff.   It was the duty of the deceased to go upon the crossing to see if a train was approaching from either direction, and to signal the motorman if and when the way was clear for the crossing of the street car.   But the performance of this duty did not absolve him from the duty of care with respect to his own safety.   He was there to look for danger.   That was his duty, not only with respect to the service in which he was engaged, but with respect to himself in the performance of that duty.   These duties were concurrent.   After the gates were lowered th street car could not cross until after the passage of the freight train.   The deceased had then no duty to perform with respect to the street car until the train had passed and the gates had been raised. Until that should occur, duty to himself, if not to the railway company, required that he should stand in a place of safety.   There were ten feet in width of unobstructed space between the south rail of the south track and the gates, where he could have stood in absolute safety and in full view of the situation.   Instead, he took his position between the rails of the south track with his back or side to the west, from which direction alone danger upon that track was to be apprehended, and, without looking to the west, watched the coming and passing of the west bound train upon the north track.   This is abundantly proven by the concurrent testimony for the plaintiff. Those speaking to the question, and who were watching him as he stood there, saw him look but in the one direction.   Such conduct can be characterized only as reckless.   Without necessity he deliberately placed himself in a situation of known danger.   In the open space he would have been immune from danger, and with equal facilities for seeing in both directions.   He had no right to stand upon the track.   Taking the risk, the consequences should not be imposed upon another.   Railroad Company v. Houston, 95 U. S. 697, 24 L. Ed. 542; Schofield v. Railway Company, 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific Railroad Company v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014.

It is urged that, because the defendant was in fault for noncompliance with statutory regulations, contributory negligence of the party injured is unavailing as a defense, and this is said to be stated with absoluteness in Deserant v. Cerillos Coal Railroad Company, 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127.   It was there ruled that the

master's liability to furnish a safe working place for his servant is not absolved by the concurrent negligence of a fellow servant. The charge of the trial court there under consideration contained the clause (paragraph 13, p. 417, 178 U. S., page 971, 20 Sup. Ct., 44 L. Ed. 1127) that if the servant knew of the failure of his employer to perform his statutory duty, and still remained in service in the dangerous place, he assumed the risk. This charge was not even excepted to or suggested as erroneous. The case gives no color to the contention of counsel. The contrary principle is sustained by the Supreme Court in the cases above referred to. In Railroad Company v. Houston, supra, the court, referring to failure to sound the whistle or ring the bell, says that such failure did not relieve from the necessity of taking ordinary precaution for safety; that negligence in these particulars is no excuse for want of ordinary care. The law furnishes no support for the contention of counsel.

It is also said that the contributory negligence of the deceased should not prevent a recovery if the locomotive engineer, in the exercise of ordinary care, might have avoided the consequence of the deceased's negligence; and this under the modification of the rule as held by the Supreme Court in Inland & Seaboard Coasting Company v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; Railway Company v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. There are no facts disclosed in this record calling for the application of the modification of the rule. It does not appear that the presence of the deceased upon the track was observed by the locomotive engineer, or that after seeing him, and after knowledge that he was unobservant of his danger, there was time to avoid the catastrophe. To bring the case within the modification of the rule it is incumbent upon the plaintiff to make a showing calling for its application.

GROSSCUP, Circuit Judge (dissenting). I cannot consent, that as a matter of law, Dunworth was, under the circumstances stated, guilty of contributory negligence.

Dunworth left his car and walked alone to the tracks. There was no proof that in stepping upon the tracks, he did not look both west and east. The presumption of law, he being dead, is that he did; for the law presumes diligence on his part, both for the protection of himself and of the passengers in his care. Once on the south tracks, he stood with his face north. There is no proof that in such posture he did not look, at intervals, both east and west; and the presumption, again in favor of diligence, is that he did. From the mere fact that he was struck by the engine, the presumption is not overcome—no witness having seen the engine until it was within seventy-five feet of Dunworth—for, though the track was straight, and Dunworth was standing between the rails, the engine could not, under the circumstances I shall now state, have been either seen or heard until it came within two or three hundred feet of him, or, at the rate traveled, within one half minute of the time he was struck.

The night was dark. True, snow lay on the ground, and there was an arc light nearly overhead; but to one standing on the tracks, a

dark engine coming down a dark track is not visualized by out-lying snow, or by an arc light overhead. There is no warrant, therefore, for holding that he could have seen had he looked, at least longer ahead than thirty seconds. About this there is no doubt, for the speed of the train was from eight to ten miles an hour, at which rate three hundred feet would be traveled in about one-half minute; and the noise of the passing freight train doubtless so smothered the noise of the coming engine as to make warning through the ears improbable. The real question then is this: Was his standing on the track, and his failure while there, to look westward oftener than each thirty seconds, contributory negligence, as a matter of law? Suppose he had gone only to the edge of the track, and, observing the precaution for his own safety required by the majority opinion, had looked west; seeing nothing, he would, of course, have beckoned his car to cross; suppose that, still looking, nothing was seen until the car reached the track, when the lightless engine loomed out of the dark, thirty seconds away, and the car was overtaken before it could clear the tracks—Would the doctrine of contributory negligence, under such circumstances, avail the railway company against either the passengers or the injured conductor? But why should it be contributory negligence in one case and not in the other? Why should the conductor be held to greater care for his own safety than for the safety of his passengers? The truth is that the majority opinion, while adhering to the academic injunction that men near railway tracks must look and listen, loses sight of the fact that the common run of men, discharging the duty under which he acted, would have done just as he did. In my judgment the rule invoked is not applicable to the case we are deciding.

The judgment is affirmed.