## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* CLARK.

The evidence was sufficient to withstand a motion for nonsuit.

JANUARY 22, 1913.

Action for damages. Before Judge Ellis. Fulton superior court. November 15, 1911.

*Little & Powell* and *M. F. Goldstein,* for plaintiff in error.
*Westmoreland Brothers,* contra.

EVANS, P. J. The plaintiff, a day watchman of the Southern Railway Company, was injured by a loose car of the Central of Georgia Railway Company rolling against him. From the record it appears that the tracks of the Western & Atlantic Railroad Company and the Southern Railway Company cross Johns Street in the City of Atlanta on a grade level. The former company has four tracks, and the latter eight or ten. Each company maintains a watchman for its respective tracks at this crossing. At this crossing the Southern maintains a grade yard; that is, there is a slight declivity towards the yard, which enables detached cars to roll by gravity to the place intended. Railroad yards of this kind are in general use, but the plaintiff did not recollect seeing cars cut off and permitted to roll over the crossing into the Southern yards before the day he was injured. The plaintiff was a day watchman in the employment of the Southern Railway Company, and his duties were "to watch out for any danger from people getting hurt in passing, by being struck by trains, fires, or any other danger that might occur, and for the protection of the company's property." He was injured by a car of the Central of

Georgia Railway Company at a point thirty-seven feet east of the crossing and between tracks 3 and 4 of the Southern Railway Company, at about three-thirty o'clock in the afternoon, under these circumstances: He had observed bits of paper and waste scattered over the tracks, some of which was burning. There were several cars near by, loaded with hay and other freight; everything was dry, and the wind was blowing. He waited until the crossing was blocked by a long train of cars on the Western and Atlantic track, which served to stop all passing over Johns Street at the time, and he thought there would be no danger to any one while he would extinguish the fire. He then proceeded to a point between tracks 3 and 4 of the Southern Railway Company, 37 feet east of the crossing, where there was a flame about knee high, and near the end of the cross-ties. While in a stooping position in the act of extinguishing the fire by scattering it with a stick and stamping it out, he was struck and injured by a loose freight-car, which had been delivered by the Central of Georgia Railway Company to the Southern yards. This car had been detached from the train of cars near the crossing, and was rolling down grade at the rate of about three miles per hour. Upon the top of the car at its rear end was a man. The plaintiff could not see the approaching car without looking up, and he did not look up until he was hit. At the time he was struck by this detached car another train was passing over the Southern tracks, upon the one next to where the plaintiff was standing when he was hit. The engineer of this train unsuccessfully attempted to warn the plaintiff of the approach of the loose car.

The question is as to the liability of the Central of Georgia Railway Company to the plaintiff under these facts, which the jury were authorized to find from the evidence. We will consider the case from the viewpoint that the car which injured the plaintiff was operated by his employer. The situation with respect to the Southern Railway Company is this: It has a railroad yard at Johns Street crossing. This yard is so constructed that there is a slight grade downwards into the yard, which enables the company to make up its trains by cutting one or more cars from those attached to the engine, and allowing the detached car or cars to roll down the grade until they reach the place intended in the yard. Such yards are in general use. It is necessary that the

public, who have rights over the street crossing which is within the sphere of the railroad's operations, be protected from the frequent and irregular movement of cars over the crossing. To meet this necessity due care on the part of the railway company would require the maintenance of a proper lookout. Instead of locating a lookout on each car, the railroad company employs a watchman to warn the public of the approach of cars. When the watchman accepted this employment he assumed the risks of service ordinarily attaching to the duties which he voluntarily contracted to discharge, and the dangers of the work which were open to observation. 3 Elliott on Railroads, § 1290. If it had appeared that the watchman's employment was with knowledge of a traffic arrangement between the Central and the Southern with regard to the interchange of freight, by which the Central was permitted to deliver its cars to the Southern in the latter's yard by detaching them at or near Johns Street and allowing them to roll in the Southern's yard, it might be contended with much force that the scope of the plaintiff's employment extended to maintaining a watch for the cars of both companies, and that neither company owed him the duty of providing a lookout for his safety. Counsel stated in their brief that such arrangement existed; but so far as we are informed by the record the movement of the car which inflicted the injury was casual. According to the evidence the Central Railway Company was a licensee. When a licensee uses the tracks of another road it owes a duty to the servants of the licensor to exercise due care for their protection. The Central Railway Company did station a man on the top of the car. He was at the brake at the far end of the car from the plaintiff at the time an engineer of the Southern train holloaed to the plaintiff in an attempt to warn him of his danger. It did not appear whether or not the man on the car heard the warning. The engineer testified that this man could have stopped the car, if he had applied the brake when he holloaed, so as to have prevented the injury; but that the brakeman on the top of the car could not see the plaintiff from his position when he was hit. It was for the jury to say whether under the facts due care would require the Central Railway Company to provide a lookout or give some signal of warning while shunting a loose car into the Southern's yard.

Was the plaintiff guilty of contributory negligence barring a

recovery? We think not. His duties comprehended not only a lookout for trains but a protection of his employer's property in the vicinity. At the time he was stricken by the defendant's car he was extinguishing a fire in close proximity of cars loaded with hay and other combustibles. It was for the jury to say whether his failure to look for the car when he was putting out the fire was such negligence on his part as prevented a recovery. In *Watts v. R. & D. R. Co.,* 89 *Ga.* 272 (15 S. E. 365), it appears that by mutual consent two railway companies, whose tracks were parallel, permitted the watchmen employed by the respective companies to walk upon the unoccupied tracks of each other for the purpose of examining the standing cars. A watchman of one company while so employed was suddenly stricken by the negligent and too rapid running of a train of the other company, and the watchman's failure to protect himself was in consequence of his attention being occupied with his duties. It was held that it was for the jury to say whether under all of the circumstances he could have avoided the consequences of the company's negligence by the exercise of ordinary diligence.

The evidence was sufficient to withstand a motion for nonsuit.
*Judgment affirmed. All the Justices concur.*