TENNESSEE ELECTRIC POWER CO. v. S. F. DAY, Adm'r.

Eastern Section. May, 1929.

Petition for Certiorari denied by Supreme Court, November 16, 1929.

Joe Brown, of Chattanooga, for plaintiff in error.

P. E. Hammack and Ford & Bryan, all of Chattanooga, for defendant in error.

SENTER, J. The parties will be referred to as in the court below, S. F. Day, Adm'r., plaintiff, and Tennessee Electric Power Co., defendant.

Plaintiff's intestate was run over and killed by one of the street cars of defendant in the suburbs of the City of Chattanooga, and this suit was brought to recover damages for the alleged negligent operation of the street car resulting in the death of plaintiff's intestate. The trial resulted in a jury verdict in favor of plaintiff for the sum of $4000. The trial judge suggested a remittitur of $3000 in overruling defendant's motion for a new trial, and rendered judgment for the sum of $1000.

At the conclusion of plaintiff's evidence in chief the defendant moved for a directed verdict, which motion was overruled. At the conclusion of all the evidence the defendant again moved for a directed verdict in its favor, and this motion was likewise overruled. A motion for a new trial made by defendant was sustained as to the ground that the verdict was excessive, and suggested the remittitur, which was accepted by plaintiff, and whereupon the motion for a new trial was overruled. From this action of the court the defendant prayed and was granted an appeal in the nature of a writ of error to this court, and has assigned errors. We deem it unnecessary to take up and dispose of the assignments of error in order and in detail. Certain of the assignments of error are directed to the action of the court in disallowing the motions for a directed verdict, based on the grounds that there was no evidence to sustain a jury verdict in favor of plaintiff, and because of the undisputed contributory negligence of the deceased the plaintiff was not entitled to recover any amount. Other assignments of error challenge the charge of the court in certain particulars, and others allege error in the refusal of the court to give in charge certain special requests submitted by the defendant. In disposing of these several assignments, we will consider and dispose of the questions of law and fact presented by the assignments.

It is disclosed by the record that plaintiff's intestate met his death in June, 1928, by being run over by one of defendant's street cars. The car line goes out Rossville Boulevard, to what is referred to in the record as 23rd street, and then turns in an easterly direction passing through the suburbs of East Lake, and on to Rossville, Georgia. At the point where the accident occurred the street car line is on a privately owned right of way belonging to the street car company, but it appears that it occupies an unused and unimproved street, which appears as a street platted but never improved, and from a photograph of the car line at and near the point where the accident occurred, passes through unimproved suburban territory with bushes and rock along the sides of the car line. It was not a street in the usual acceptation of the term. Vehicles could not use any portion of the right of way. However, it appears that the street car track is generally used by pedestrians as a walkway between certain streets, and there is evidence that the track had been so used since its construction and by the implied acquiescence and knowledge of the street car company. On the night that the deceased met his death, he had apparently started to his home, and there is evidence in the record that he was drinking and probably intoxicated. He was lying down on the street car track. It was at night, and as the car which ran over him approached, he was seen by passengers on the front platform of the street car, or in the doorway of the street car. There is a considerable conflict in the evidence on the question of the motorman operating the street car having had his attention called to the presence of the obstruction on the track prior to the time that the motorman applied the emergency brakes. There was some evidence that one of the passengers on the platform of the street car saw the object on the track when the street car was approximately 100 or 150 feet away, and that he called to the motorman that someone was on the track ahead. There is some evidence in the record that the motorman was engaged in counting tickets or transfers immediately preceding the accident and was not looking ahead until about the time the car ran over the deceased. The car was traveling at about twenty-one or two miles per hour. The motorman testified that the head lights on the street car were in good order, and that he saw the object on the track when he was about 100 feet away, and promptly applied the brakes and brought the car to a stop after the front part of the car had passed over the body of the deceased. There is other evidence in the record that was in conflict with this statement of the motorman. Some witnesses testified that the motorman did not apply the brakes and did not take any steps to stop the car until about the time the front end of the car passed over the body of the deceased. There being a conflict in the evidence on the material questions, we are of the opinion that the trial judge was

not in error in overruling the motion for a directed verdict in favor of the defendant. We are of the opinion that the most serious question involved is with reference to the charge of the court on the question of the last clear chance rule. It is the contention of appellant that the trial judge in effect charged the jury, that notwithstanding the negligence of the deceased in being on the track, either asleep or intoxicated, if the motorman operating the street car saw the deceased in that position on the track, or could have seen him by the exercise of ordinary care, and failed to use all means at his command to stop the car and prevent the accident, the defendant would be liable for some amount, and that this was an erroneous instruction to the jury, in that the instruction ignored the general rule that contributory negligence of the deceased as the proximate, or one of the proximate, causes of the injury bars a recovery.

The charge of the court on that subject is as follows:

"Now, if out here where this accident happened the defendant's track there was a place where the public habitually used it as a walkway, or as a travelway, and if the defendant knew that and had acquiesced in the use of its track as a pathway or a walkway, then it would be the duty of the motorman in charge of this car to exercise reasonable care to keep a lookout ahead while operating the car along there, such a degree of care as would be expected of an ordinarily prudent man operating a car of that kind and character, that they were using at that time, at the time and place and under the surroundings; and if the motorman failed to do that he would be guilty of negligence; and if this boy was on the track and the motorman saw him·on the track, the young man was laying down on the track, and the motorman saw him or by the exercise of reasonable care could have discovered him there on the track, then it would be his duty to apply the brakes and use all reasonable means to stop the car or check the speed of the car and prevent the accident, and if he failed to do that he would be guilty of negligence and if that resulted in the death of this young man, then his father, as the administrator, would be entitled to recover the value of his life.

"Now, if this young man got drunk, and if he was intoxicated and went out and laid down on the track, or sat down there in between the rails, then he would be guilty of contributory negligence as a matter of.law, because a railroad track is an admonition of danger to all people, and they are expected to stay off of it; and if he got on that track after he was drunk, then he would be guilty of contributory negligence and he would be guilty of the same degree of contributory negligence if he was drunk as he would if he was sober; because if his

drunkenness was voluntary, that would be a matter that he would be responsible for and if he voluntarily got drunk, the law would require the same degree of care of him as though he was sober; and if he was drunk there on the track he would be guilty of contributory negligence, and if you should conclude that the defendant was guilty of negligence that caused his death, then it would be your duty to cut down or mitigate the recovery, taking that into consideration in the reduction of the damages that plaintiff would have otherwise been entitled to recover if the deceased had not been guilty of contributory negligence.''

The court further charged that there was no evidence to show that the defendant did not have a standard headlight, and no evidence that the brakes were not in good condition, and that insofar as the declaration alleging those elements of negligence, there was no testimony introduced to support those allegations, and that the jury should not consider the allegations in the declaration to the effect that the headlights and brakes were insufficient.

At the conclusion of the general charge to the jury the defendant tendered several special requests to be given in charge, and which were refused. These were as follows:

"1.

"A railroad track is recognized in law as a place of danger, because it is known generally to the public that cars may pass on the track at regular intervals, and it is the duty of one walking on railroad tracks to be constantly on the lookout for his own safety. A person walking, standing or lying on the railroad track should not only look frequently, but must at his peril look from time to time, and if the deceased failed in this duty and his failure to be so on the lookout for cars, if you find that he did fail in this duty, and this failure on his part proximately contributed to or helped to bring about the injury, the administrator cannot recover and you should find a verdict in favor of the defendant.''

The first portion of this special request, with reference to a railroad track upon which street cars are operated at regular intervals, and the duty of persons being on the track to keep a constant lookout for cars, was fully covered by the general charge on the subject, and as above quoted. The balance of this special request was properly refused because it did not contain any reference or statement to the exception generally recognized to the general rule of contributory negligence, and which exception to the general rule imposes liability for a failure to exercise reasonable care to prevent injuring one exposed to danger under the discovered peril rule, referred to as the last clear chance doctrine. The second special request sought to have the court instruct the jury that

where the plaintiff was guilty of contributory negligence in placing himself on the track of the defendant, the law did not impose any duty upon the motorman to be on the lookout for him, and that under those circumstances the deceased would be merely a licensee, even though persons were accustomed to walk along the tracks, and defendant would not be liable, unless the motorman of the street car actually saw the deceased on the track in a place of danger, and had ample time and space to stop the car in time to avoid the accident, and failed to do so by the exercise of reasonable care. By this special request it is contended that where one becomes an obstruction on the track, and is lying down on the track, a street car company would not be liable unless the operator of the street car actually saw the deceased, and after seeing him had time and space to stop the car, but failed to do so by the exercise of reasonable care. This contention of appellant will be further considered in disposing of other questions, and the general subject of the last clear chance doctrine, and the duty of motormen operating street cars to keep a lookout for persons and obstructions on the street car track.

The third special request which the trial judge refused to give in charge to the jury, is very similar to the second special request above referred to, and will likewise be disposed of in considering the general rules applicable to the question. To the same effect is the fourth special request, and also the fifth.

The sixth special request by defendant, and which was refused by the trial judge, is as follows:

"The court instructs you that if you find that there was a public place used by the public, that there was no duty on the part of the motorman to exercise care to discover the deceased upon the track, if you should find that the deceased was making an unlawful use of the track by lying down upon or between the tracks, and the defendant would not be liable unless you believe that the motorman failed to use reasonable care after he actually discovered the deceased."

It is the contention of appellant that it was error to refuse to give in charge the above quoted special request, because it presented the question that if the conduct of the deceased by getting drunk and lying down on the tracks at night constituted gross negligence, and an utter disregard for his own safety, the last clear chance doctrine could not be invoked by plaintiff even though the defendant was negligent in failing to have the motorman keep a lookout at the time of the accident. This contention presents one of the serious questions and will be further discussed.

Probably the best considered and most frequently discussed case by the Supreme Court of this state is Todd v. Railroad, 135 Tenn., 95. The opinion was written by former Justice Williams. The

opinion in that case on the subject of "discovered peril," or "last clear chance," begins with the old English case of Davies v. Mann, 10 M. & W., 546, 19 R. Cas., 190, commonly referred to as "The Donkey case," and aptly referred to in the opinion by Judge Williams, "the donkey therein involved has been embalmed in the history of the law of negligence, his case having become a veritable storm center of disputation by courts and text-writers," and in which case Lord Abinger, C. J., said:

"As the defendant might, by a proper care, have avoided injuring the animal, and did not, he is liable for the consequence of his negligence, though the animal may have been improperly there."

In the brief statement of the donkey case, it appears that the donkey had his fore feet fettered, and was turned out on the roadway to graze, when he was struck and injured by one driving a three horse team at a fast rate of speed. It is not disclosed in the statement of the case whether the driver of the team actually saw the donkey before striking it, or that he knew that the donkey was fettered and incapable of getting out of the way of the approaching vehicle. This seems to be the beginning of the doctrine variously referred to as "discovered peril," and "last clear chance." The courts of America have not generally gone as far in support of the doctrine as the English courts. In most jurisdictions, but with some exceptions, and under ordinary conditions, it is generally held that in order to charge a defendant under the last clear chance rule the defendant must have seen or had actual knowledge of the peril of the person or animal. In order to permit a plaintiff to invoke the doctrine of last clear chance or discovered peril, to have a recovery notwithstanding his own negligence, the defendant's conduct must be wilful or wanton and in total disregard of the life or safety of the one in peril. As stated in Todd v. Railroad, the case of Davies v. Mann sustained more than the doctrine of discovered peril—that defendant is bound by what he might have discovered in the exercise of ordinary care, and that that phase of doctrine is championed by the leading English text-writers on the law of torts, Sir Frederick Pollack, Torts (9 Ed.), 473, et seq., and by the English author, Mr. Bevins, in his work on Negligence (pages 150-152). However, the writer of the opinion in the Todd case further says that the "decided and well-nigh overwhelming weight of the American adjudications is against Davies v. Mann, except as that case may be deemed to have announced the doctrine of discovered peril and the duty imposed on a defendant as to his acts after a consciousness thereof.

Our Federal courts, except in certain exceptional cases, generally hold that a defendant is not liable where plaintiff's negligent exposure of himself to peril is unknown to the defendant, or more

properly, a defendant is not liable unless in case, where, aware of plaintiff's negligent exposure of himself to peril, the defendant omits reasonable care to avoid the injury. (Dunworth v. Grand Trunk, etc., R. Co., 127 Fed., 307, 62 C. C. A., 225; Chunn v. City, etc., R. Co., 207 U. S., 302, 52 L. Ed., 219, and other cases cited therein.)

The construction of Davies v. Mann, given by the Supreme Court of this State, or rather the conception, seems to be that in order to successfully invoke the last clear chance doctrine by plaintiff, the peril of the plaintiff must have been discovered by the defendant, and after the peril is discovered the defendant fails to exercise reasonable care to prevent injuring the plaintiff. (Railroad v. Williford, 115 Tenn., 122, 88 S. W., 178; Railroad v. Roe, 118 Tenn., 610.) But with the further distinction, as recognized in Grigsby v. Bratton, 128 Tenn., 597, 603, and Todd v. R. R., supra, that where a defendant is negligent and the plaintiff is also guilty of negligence which continues to operate concurrently with the negligence of the defendant at the moment of the accident in producing it, there is no independent, self-supporting act of the defendant that solely causes the injury, or so comes into operation as to make plaintiff's negligence remote. As stated in Grigsby v. Bratton, supra: "Where the plaintiff and defendant are thus guilty of acts of negligence which together constitute the proximate cause of the injury, then the negligence of the plaintiff, however slight, bars a recovery." But in Todd v. R. R., it is said:

"If during a period at or before the infliction of injury adequate for preventive action by defendant, he had actual knowledge of plaintiff's danger and failed to exercise ordinary care to avoid it, all authority is to the effect that plaintiff may be awarded relief; for the negligence of defendant takes the color of wilfullness. Passing beyond that point, the courts are in conflict, one line of decisions requiring actual knowledge, on the part of defendant, and the other requiring merely such a fair opportunity to have actual knowledge of plaintiff's peril that a prudent man would have had it. In our view Davies v. Mann, as applied to its or equivalent facts, should be construed to relate, if to successive acts, then some conscious act of misconduct on the part of the defendant is succession.

"Where the acts of misconduct or negligence on the part of plaintiff and defendant are not successive, but simultaneous, in such case, or the act of the plaintiff may not be conceived of as terminated as a casual factor, there should be no recovery."

In the same case the opinion of Mr. Justice Williams proceeds with this further observation bearing on the subject:

"Ordinarily legal causation deals with the relation of act to result, as cause to effect, and is therefore the equivalent of actual causation. But this is not invariably true, since the law of contributory negligence proceeds upon principles of public policy, which policy may, on being brought into consideration, force a modification of the normal conception of causation, so that it is 'with causal relation plus some restrictive principle of policy' that the courts have to deal. In other words, in certain attitudes the public is, so to speak, treated as a third party whose rights are to be reckoned with in the result to be declared—the award or non-award of a recovery to a plaintiff. Society is not always unconcerned as to whether the conduct of its members shall reach the standard of due care erected by the law; and that standard may tend to be attained by the assistance to be given or refused by society's judicial functionaries.

"It is on such considerations that cases composing an exceptional class have been determined. We refer to those instances where the defendant is engaged in a business hazardous to the public in certain aspects, such as that of operating dangerous instrumentalities, and where, therefore, the law imposes the duty on the defendant continuously to anticipate that some other (plaintiff) may negligently subject himself to a peril from defendant as a source, the latter having control of some instrumentality that has inherent potentiality of danger. Such a defendant is precedently and continuously to the moment of injury, under the duty of lookout for the other, and his or its negligence in failing to discover the exposure of such a plaintiff and averting injury by the exercise of ordinary care is on grounds of policy considered to be proximate cause. The law in such case conceives of the negligence of the plaintiff as being remote; it may be in disregard of logic or of actual causation. It is assigned that status in the law's regard by reason of the policy of the law, though it may be that from the standpoint of actuality of cause the plaintiff's negligence is concurrent with the defendant to the moment of injury." Citing Teakle v. San Pedro, etc., R. Co., 32 Utah, 276, 90 Pac., 402, 10 L. R. A. (N. S.), 486; Bourrett v. Chicago, etc., R. Co., 152 Iowa, 579, 132 N. W., 973, 36 L. R. A. (N. S.), 964; Patterson's R. R. Accident Law, 55.

Mr. Thompson, in his work on negligence, 1 Thomp. Neg. (2 Ed.), Sec. 232, is also quoted with apparent approval by the writer of the opinion in Todd v. Railroad, and in which the text-writer recognizes the same rule, in referring to the English cases, and thus states it:

"The doctrine can have no just application in any case except where the person inflicting the injury was under the duty of exercising care to discover the exposed situation of the person receiving the injury. If this text is kept steadily in view it will lead us out of many difficulties and prevent much confusion. The best illustration of the principle is found in the case of the engineer of a railroad train on a railroad, where there are grade crossings, or where the track runs along a public street or highway, and where consequently human beings or animals are liable to get on the track. The engineer is driving the instrument of danger forward, generally at a high rate of speed. He is active, and the person or animal on the track is passive. He is therefore under a continuous duty of watchfulness. . . . The sound principle then is that the defense of contributory negligence is not available where the defendant was guilty of a negligent act or omission, subsequently to the time when he ought to have known that the negligence of the plaintiff or of the person injured had created a situation of peril."

Applying the principle as above quoted to the facts of the instant case, it would appear that the learned trial judge, in the portion of the charge complained of by appellant, and also in declining to give in charge the special requests offered by defendant, was governed by the rule as above set forth. There was evidence to show that the public habitually used this street car track as a walkway, at and near the point where the accident occurred. It was really in the open country. While the track was not on a used street, the photograph made exhibit to the record shows that there were bushes and rocks on either side and close up to the car line, making it impossible for vehicles to pass alongside the car line, and also making it necessary for persons walking on the track or on the space occupied, to either walk in between the rails or on the ties. With this evidence in the record, the learned trial judge charged the jury that if they found from the evidence that the track at and along this point was habitually used by pedestrians as a walkway, and that this was known to the motorman, that the motorman operating a street car at or near that point was charged with the duty of keeping a lookout for persons walking on the track, and if an object or person appeared upon the track or within striking distance, it was the duty of the motorman to use all reasonable means at his command to prevent striking such person, and a failure so to do would be such negligence as would entitle the plaintiff to recover. The court charged the jury in that connection, that if the deceased was lying down on the track either drunk or asleep, he was guilty of negligence, and that his negligence should be considered by the jury in fixing the amount of the verdict, and that

the verdict should be reduced because of the contributory negligence of the deceased. Taking the charge in its entirety, it was in effect a charge that under the last clear chance doctrine, the motorman was chargeable with negligence if he saw, or could have seen by the exercise of ordinary care, the peril of the deceased, and failed to exercise ordinary care to prevent running the car over the deceased, that the defendant would be liable, notwithstanding the contributory negligence of the deceased in voluntarily placing himself in a position to be run over by a car of the defendant.

, In the case of Dunworth v. Grand Trunk, etc., R. Co., supra, also referred to in Todd v. Railroad, supra, it appears that an employee of a street car company was standing at a street crossing for about three minutes on the railroad track of defendant, and was unobservant, except he was looking at a passing train, and was struck by another train approaching from the rear without giving signals of warning. In that case it was said:

> "It is also said that the contributory negligence of the deceased should not prevent a recovery if the locomotive engineer, in the exercise of ordinary care, might have avoided the consequence; and this under the modification of the rule as held by the Supreme Court in Inland & Seaboard Coasting Co. v. Tolson, 139 U. S., 555, L. Ed., 270; Railway Co. v. Ives, 144 U. S., 408, 36 L. Ed., 485. There are no facts disclosed in this record calling for the application of the modification of the rule. It does not appear that the presence of the deceased upon the track was observed by the locomotive engineer, or that after seeing him, and after knowledge that he was unobservant of his danger, there was time to avoid the catastrophe. To bring the case within the modification of the rule, it is incumbent upon the plaintiff to make a showing calling for its application."

In the case of Denver City Tramway Co. v. Cobb, 164 Fed., 41, 90 C. C. A., 459, opinion by Mr. Chief Justice Van Devanter, it was held, first, that "the exception does not apply where there is no negligence of the defendant supervening subsequently to that of the plaintiff, as where his negligence is continuous and operated down to the moment of the injury. Second, the exception does not apply when the plaintiff's negligence or position of danger is not discovered by the defendant in time to avoid the injury." Citing Chunn v. City, etc., supra; Rider v. Syracuse Rapid Transit Co., 171 N. Y., 139, 58 L. R. A., 125; Elliot on Railroads (2 Ed.), Sec. 1175.

In the case of Zirkle v. Railway Co., also cited and quoted from in Todd v. Railroad, the facts were very similar to Chunn v. City Ry. Co., supra. In that case the Kansas court (67 Kan., 77) said:

> "In the present case the deceased turned his back in the direction from which the danger came, and was absorbed in

conversation. His conduct negatived all suggestion of vigilance and showed a negligent disregard of the peril surrounding him. The fact that the freight train which struck him was standing still on what was called the storage track, forty-five feet distant, when he started over the crossing, was not an assurance that it would remain stationary. . . . The indifference shown by the deceased in turning his back to the train which ran upon him, and taking a position on the track where death or great bodily injury was inevitable if the cars moved to the place where he stood without diverting his attention from the conversation which engaged him, constituted contributory negligence which cannot be excused.''

The facts in the Todd case were somewhat similar to the cases above referred to. In that case the accident occurred at Robbins, a small station on the main line of the defendant company, at a point where the highway crosses four tracks in the switch yard of the defendant. Because of the location of a brick plant at that station much switching of cars is required over the tracks at that point. It appears that a local freight train was engaged in switching operations in the yard, and that a drawhead had pulled out of the car, with the result that a cut of cars was left standing over the highway on the westermost or fourth track, and that these cars had obstructed the passage of pedestrians for nearly thirty minutes. Todd, a man of about sixty years of age, was on his way from the home of his son on the east side of the railroad to a barn on the west side, and was carrying a sack of corn, and walked to the crossing, but found it obstructed, and sat down on the steps of the depot building to await a clearance of the street. While sitting there he heard the whistle of a locomotive, and assumed that the cars which had blocked the street crossing were about to be moved, and he started toward the crossing and passed over the first, second and third track. He put the sack of corn down on the track, and took his position on the end of the ties of the third track, where he stood engaged in conversation with another man. His face was turned continuously for twenty minutes to the south. The obstructing cars were still standing across the street. While the two men were thus standing near the cars which obstructed the street crossing, another freight train pulled into the station on the second track, approaching from the south, and Todd's attention was called to that train. While his back was turned in that direction, the engine of the first train, with a portion of the train of cars which had been detached from the cut of cars obstructing the crossing, had been run northward to a switch and had been switched from the fourth to the third track, for the purpose of taking them to another switch south of the highway and go on to the fourth track and draw the obstructing cut of cars from the crossing towards

the south. Those cars on the third track proceeded under the control of the engine, but no brakeman was on the car next to the highway being approached to give warning, and it did not appear that Todd was seen standing in striking distance of the track by the employees operating the engine. The rear car thus backing from the north on the third track struck plaintiff, resulting in his injuries. Todd did not see or hear the approach of the engine or cars, but did not look in that direction at all, though the view was unobstructed for above 200 yards. It also appeared that Todd had lived for many years at this station and was familiar with the use of the tracks, two of which were main line tracks. In that case the court said that assuming that it was negligence upon the part of the railway company to run the cars onto the crossing and against the plaintiff without warning or signals of its approach, that Todd was negligent by standing in the face of danger for so long a time without looking about him, or to take any care for his own safety, and that nothing else appearing, plaintiff could not recover, and further stated that the train causing the injury being engaged in switching operations in the yard of the defendant, the statute prescribing precautions to be observed was not applicable, and hence the case was to be governed by common-law principles. The court then referred to the rule or duty imposed upon one to look and listen when going upon a railway track, and that this duty continues so long as one is upon it using it as a walkway, citing Railroad v. Patton, 89 Tenn., 379, 15 S. W., 921, 12 L. R. A., 184. The court also quoted from Railroad v. Satterwhite, 112 Tenn., 185, 79 S. W., 106, wherein it is said: "A person about to cross a railroad track is bound to recognize the danger, and to make use of hearing as well as of sight, and if either sense cannot be rendered available, the obligation to use the other is stronger—to ascertain" the approach of trains before attempting to cross.

The last clear chance doctrine was invoked in the Todd case, and after a full discussion of numerous authorities, the court held that because of the contributory negligence of the plaintiff continuing to the moment of the accident, and under the facts as disclosed, that the last clear chance doctrine would not apply, and denied a recovery to plaintiff. The case seems to proceed upon the further rule that where the plaintiff is guilty of gross negligence, and exercises no care for his own protection, and is indifferent to the known danger which surrounds him, and his peril is not actually discovered by the defendant's servants in charge of the engine, that the last clear chance doctrine does not apply.

Applying this rule to the instant case we are constrained to hold that because of the gross negligence of the deceased in lying down on the car line, where he knew that street cars in the regular course of traffic passed frequently along the tracks, and that especially

in the night where persons or objects are not so easily observable by the motorman, and there being no evidence in the record that would warrant a conclusion that the motorman actually .saw the deceased in time to prevent the car running over him, that the rule of discovered peril or last clear chance would not be applicable to the facts. Under any fair consideration of the evidence, and the most favorable inferences to be deducted therefrom, it cannot be said that the motorman was guilty of gross negligence. There is no evidence in the record, nor could there be any fair inference that the motorman at the time and place, was guilty of any wilful or wanton misconduct, or any conduct upon his part or any omission or any act that would amount to a wanton disregard of the rights of others.

The learned trial judge should have charged the jury that if they found from the evidence that the deceased was guilty of gross negligence, and exhibited an utter disregard for his own safety, and exhibited an indifference to the known danger of lying down in the nighttime on a street car track passing through unimproved property, such negligence would constitute the proximate cause, and not merely remote contributory negligence; and should have charged the jury further with reference to the duty of the motorman operating the car, by stating that unless they found that from the facts the motorman was guilty of gross negligence, or acts of omission or commission, amounting to a wanton disregard of the rights of others, that the plaintiff could not recover under the last clear chance doctrine. This, we understand, and conceive to be, a sound statement of the rule as found in the decisions by the Supreme Court of this State herein cited, and the better weight of authority.

It results that the assignments of error based upon the contention of error in the portion of the charge of the court referred to on the question of discovered peril or last clear chance, are sustained, and the case is reversed and remanded for a new trial.

Owen and Heiskell, JJ., concur.