[Civ. No. 6959. Second Appellate District, Division Two.—October 30, 1931.]

CHARLES G. BAECHT, Plaintiff and Appellant, v. MARSH BROS. & GARDENIER, INC. (a Corporation), Defendant and Respondent; THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Intervener and Appellant.

64

Hugh L. Dickson for Plaintiff and Appellant.

Robert Brennan, M. W. Reed and E. T. Lucey for Intervener and Appellant.

Joe Crider, Jr., for Respondent.

CRAIG, Acting P. J.—The plaintiff and the intervener in an action for personal injuries appealed from a judgment of nonsuit, upon the ground that under the doctrine of last clear chance a question of fact within the exclusive province of the jury was presented.

The defendant and respondent operated small construction trains in a switch-yard of the intervener railway company, upon several easterly and westerly lines of track, as an independent contractor. The plaintiff was a welder of steel rails installed in said company's tracks, as an employee of the latter. He had completed the inspection of his previous work upon one line by looking in between the cars of a train then standing thereon, and had started in a slightly northeasterly direction, about to step on to a near-by parallel track, when he heard a shout of warning from the defendant's superintendent whom he had just left, and was immediately struck by a train of repair-cars which came from the west. In his action against the contracting corporation it was alleged that the defendant so negligently operated its engine that it ran into and collided with his person, resulting in his permanent injury. The defendant joined issue, alleging that the plaintiff negligently, without looking where he was going, and without precaution to ascertain the presence of said engine, stepped from a place of safety into the path on which the engine was traveling The plaintiff's employer, the intervener, alleged that the defendant had been negligent, that subsequently said employer had expended large sums of money pursuant to the Workmen's Compensation Insurance and Safety Act for hospital and medical care of the plaintiff, and prayed

recoupment from the defendant of any theretofore paid or which the intervener might thereafter be compelled to pay to the plaintiff.

Contributory negligence is conceded. The plaintiff testified that he was familiar with the various lines of parallel road operated in the yard, that he was an experienced employee, and that he had seen the trains "running up and down frequently; every 7 or 8 or 10 minutes". It was testified by the superintendent: "He was standing right beside the engine first, and he started to walk towards the tracks. I saw him right up until the time he was struck. He did not get between the rails on the construction company's tracks. . . . I was 10 or 15 feet from him when I saw him put one foot on or near the rail. When I saw him put his foot on the rail the engine was right upon him." "I don't know whether I looked at it or not, but it would have been in sight had a person looked in that direction. It was coming from the west and going east." It was elicited from the engineer that he was running easterly at a speed of about 10 or 12 miles per hour with eight cars weighing approximately 32 tons; that "when Mr. Marsh first hollered, he said, 'Look out', and then I applied the brakes and when I got my eye on Baecht it looked like he was in about 6 or 7 feet of the locomotive, stepped afoul— backward into the locomotive. . . . I think Baecht was 6 or 7 feet from me when Marsh hollered; it was the same distance from Baecht when I first saw him." None of the essential facts as related by other witnesses are controverted by the plaintiff. From the brief moment afforded him for observation of the sudden occurrence, he was able to recall that he anticipated the approach of a train from the opposite direction. He swore, however, that he saw none, but: "I don't think I looked behind me to see whether or not there was one coming from the west. I was looking east. . . . The first intimation I had that a train was about upon me or coming towards me was when I heard a shout 'look out'. . . . I didn't look, I didn't stop to look, I jumped; I tried to jump anywhere, but it was too late." An eye-witness who rode on the train corroborated the plaintiff in the following language: "After I heard these men hollering I turned around and I had not more than turned around until we hit him."

▇ The burden in such cases lies with the plaintiff to establish that the defendant, knowing of the plaintiff's peril could, and that the latter could not, have avoided the injury. (*Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259].) It appeared that a person standing between the lines of track could see a train approaching from a westerly direction about one-half mile from where the plaintiff attempted to cross. We are not concerned with the usual questions involved between a railroad company and a licensee or invitee as frequently presented in actions by employees against their employers. ▇ The plaintiff and the defendant were both employed by the intervener railroad company, and as such each was an invitee, each being rightfully upon the tracks when in performance of his respective duties. But under such circumstances the defendant owed the plaintiff the same duty and degree of care as it owed its own employees under like conditions. (*Central R. Co.* v. *De Busley*, 261 Fed. 561; *Denver & R. G. R. Co.* v. *Elliott*, 59 Colo. 29 [148 Pac. 269]; *Central of Georgia R. Co.* v. *Clark*, 139 Ga. 313 [77 S. E. 31]; *Bailey* v. *Louisiana etc. R. Co.*, 129 La. 1029 [57 South. 325]; *Wells* v. *McIntyre*, (Tex. Civ. App.) 136 S. W. 1196.) In the appellant's cited cases conflicting evidence as to whether the plaintiff was negligent was held subject to the determination of the jury; but in the instant case, as stated, the negligence of the plaintiff was admitted, and is not questioned upon appeal.

We are not advised of the existence in this state of a case in all its essentials similar to the one here presented. In similar railroad yard cases from other jurisdictions, however, it has been repeatedly held that the law would refuse to impose upon a defendant in the plaintiff's behalf any other than the doctrine of actually discovered peril. (*Todd* v. *Cincinnati, N. O. & T. P. Ry. Co.*, 135 Tenn. 92 [L. R. A. 1916E, 555, 185 S. W. 62]; *Baker* v. *Shafter*, (Tex. Civ. App.) 231 S. W. 349; *M. O. & G. Ry. Co.* v. *Lee*, 73 Okl. 165 [175 Pac. 367]; *Hovius* v. *Cincinnati, N. O. & T. P. Ry. Co.*, (Ky.) [107 S. W. 214]; *Hummer's Ex'x* v. *Louisville & N. R. Co.*, 128 Ky. 486 [108 S. W. 885].) "If a traveler voluntarily or without reasonable cause stops on a track, or so near it as to expose himself to injury by passing trains, and, while in such a position of danger fails to look in both directions and to listen for noises which ordinarily indicate the

approach of a train, and is struck by a locomotive or car negligently run upon the track, his own want of care must be held to be one of the causes of the accident, and there can be no recovery for the injury." (*Quinn* v. *Chicago & E. R. Co.*, 162 Ind. 442 [70 N. E. 526].) "It does not appear that the presence of the deceased upon the track was observed by the locomotive engineer, or that after seeing him, and after knowledge that he was unobservant of the danger, there was time to avoid the catastrophe. To bring the case within the modification of the rule it is incumbent upon the plaintiff to make a showing calling for its application." (*Dunworth* v. *Grand Trunk W. R. Co.*, 127 Fed. 307 [62 C. C. A. 225].) "The exception does not apply where the plaintiff's negligence or position of danger is not discovered by the defendant in time to avoid the injury." (*Denver City Tramway Co.* v. *Cobb*, 164 Fed. 41 [90 C. C. A. 459].) Authorities wherein this rule has been applied to a sudden appearance of a pedestrain within the path of danger are too numerous to require their further citation.

Hence, it becomes patent that the doctrine of last clear chance is inapplicable to the instant case. This doctrine was not intended as an instrument for the splitting of seconds when an emergency arose. "There still seems to be some misconception of this doctrine of last clear chance. It was not devised as a last resort to fasten liability on defendants. Like the body of the law of negligence, to which the doctrine appended, the test remains as that of ordinary care under all of the circumstances." (*Giannini* v. *Southern Pac. Co.*, 98 Cal. App. 126 [276 Pac. 618, 626].) "It is the exception to the general rule, relating to the defense of contributory negligence, that a showing of a failure to fulfill the duty of exercising reasonable and ordinary care to avoid injuring a person who is known to be in a situation of peril from which he cannot extricate himself by the exercise of ordinary care will render a defendant liable in damages for the resulting injury despite the previous negligence of the person injured. This exception to the general rule, however, has no application to a situation where by their mutual carelessness an injury ensues to one of two parties, both of whom are contemporaneously and actively in fault down to the very moment of injury." (*Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259].) We are not

to be understood as here passing upon the issue as to negligence of the respondent, but we do hold that in the light of prevailing authority the ground assigned for reversal is untenable.

The judgment is affirmed.

Thompson (Ira F.), J., and Fricke, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 28, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1931.